C. Ted Brady and Agnes J. Brady, his wife, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 71280. Filed November 22, 1960.

*Wayne Calhoun Booth, Esq.*, for the petitioners.
*James D. Webb, III, Esq.*, for the respondent.

OPINION.

Murdock, *Judge:* The Commissioner determined deficiencies of $8,767.22 and $51,776.54 in income tax of the petitioners for the years 1952 and 1954. One of the adjustments which he made for 1954 was to add $126,617.44 to income with the following explanation:

(a) It has been determined that you realized a long term capital gain in 1954 of $253,234.88 as the result of the transfer by you of 126 shares of Coffey House Corporation stock to the Brady Construction Company in exchange for credits in the amount of $290,734.88, the simultaneous transfer of said stock by the Brady Construction Company to the Brady-Swalling Company partnership and the concurrent dissolution of the Brady-Swalling Company partnership. Inasmuch as you reported no income from the above transfers, income reported is being increased by $126,617.44 ($253,234.88 less the 50 per cent deduction provided by Section 1202 of the 1954 Internal Revenue Code).

The only issue for decision is whether the Commissioner erred in making that adjustment. Counsel for the parties have indicated that they will have no disagreement as to 1952 once the above issue relating to 1954 is decided. The case was submitted on a stipulation of facts which is adopted as the findings of fact.

C. Ted Brady and Agnes J. Brady, husband and wife, filed joint Federal income tax returns for 1952 and 1954 with the district director of internal revenue at Tacoma, Washington.

Ted, his mother Lena Brady, and his brother Ben Z. Brady were partners conducting a construction business under the name Brady Construction Company at all times material hereto. That partnership was formed in about 1943 after the death of Ted's father and continued a business formerly conducted by the father, Ted, and Ben. The terms of the partnership agreement are not disclosed in this record except for the statement that profits and losses were being shared 40 per cent each by Ted and Ben and 20 per cent by Lena.

The Brady Construction Company, hereafter called BC, and the Swalling Construction Company, a corporation, entered into a joint venture in 1949 under the name of Brady-Swalling Company, hereafter called B–S, to engage in the construction business in Alaska. Profits were to be shared equally. This joint venture was amended prior to 1952 so that Swalling Construction Company was succeeded as a party, by A. C. Swalling and J. H. Clawson as individuals. Swalling, Clawson, and Ted organized two Alaskan corporations in 1950, one called Coffey House Corporation and the other called 1200 L Street Corporation. The stock in each of those corporations was issued 126 shares to Ted, 126 shares to Swalling, and 1 share to Clawson. Ted's basis for the 126 shares of Coffey House Corporation stock issued to him was $37,500. Each of those corporations was formed for the purpose of acquiring FHA loans to construct apartment houses on sites which the corporations had acquired in Anchorage, Alaska. Each received an FHA loan in a substantial amount and

entered into a contract with B–S for the erection of a 14-story apartment building. B–S entered into an agreement on May 24, 1950, engaging Earl W. Morrison and Donald N. McDonald, architects, to prepare plans and specifications for the two apartment buildings.

Controversies arose in 1953 in which Swalling and Clawson disputed the claims of the architects for compensation and contended that Ted, acting for BC and himself, had wrongfully withdrawn funds from B–S in a large amount which created a deficit in the capital account of BC and caused B–S to become insolvent. Ted took opposite views and made some counter-contentions. The disputes resulted in lawsuits by the architects, suits by Swalling and Clawson against BC and each of the partners thereof, and cross-complaints by Ted and BC in the suits brought against them alleging, *inter alia*, that Clawson had appropriated B–S funds for his individual enterprises. A suit between the parties to the joint venture was tried in King County, Washington, on July 12, 1954. A proposal was made next day for final settlement of the affairs of the joint venture. The parties to the litigation and their attorneys had an extended meeting immediately after the close of the trial which meeting resulted in an oral agreement followed by a written agreement a few days later carried into effect by documents of settlement signed by all parties. The written agreement was dated July 15, 1954, and was in part as follows:

This agreement is between C. T. BRADY, B. Z. BRADY, and LENA M. BRADY, individually and as copartners doing business as BRADY CONSTRUCTION CO., hereinafter referred to as First Parties, and SWALLING CONSTRUCTION CO., INC., and A. C. SWALLING and J. H. CLAWSON, individually and as copartners doing business as SWALLING CONSTRUCTION COMPANY, hereinafter referred to as Second Parties.

1. The purpose of this agreement is to make a full, final, and complete settlement between the parties hereto with respect to all rights, liabilities and obligations as between themselves, as well as any rights they may have against any corporations controlled by any of them as set forth herein, and is intended as a full and final disposition of all pending actions between the parties, as well as the disposition of two lawsuits pending in Alaska in which McDONALD and MORRISON are Plaintiffs.

2. First Parties agree to contribute to the BRADY-SWALLING COMPANY 126 shares of common stock of the COFFEY HOUSE CORPORATION, and Second Parties agree to contribute to the said partnership 127 shares of common stock of the 1200 L STREET CORPORATION.

3. The parties hereto agree, in settlement of the disputed accounts of the BRADY-SWALLING COMPANY, to the respective assumptions of obligations hereinafter provided, and to the distribution to First Parties of the issued common stock (i.e., 127 shares) in the 1200 L STREET CORPORATION, now held by Second Parties (J. H. Clawson and A. C. Swalling), and distribution to Second Parties (J. H. Clawson and A. C. Swalling) of the issued common stock (i.e., 126 shares) in the COFFEY HOUSE CORPORATION, now held by First Parties.

Fourteen pages of schedules were attached to the settlement agree-

ment dated July 15, 1954. That agreement entered into at arm's length was carried out in accordance with its terms during the calendar year 1954.

The books and records of B–S reflected the settlement agreement as follows:

*Partner's Capital Accounts . . . . Brady-Swalling Company*

| | Brady Construction Company | Clawson and Swalling |
|---|---|---|
| Partner's capital accounts per books prior to contributions of capital (deficit)_____ | ($249, 050. 50) | ($71, 319. 00) |
| Add: Capital contributions— | | |
| Coffey House Corporation stock_____ | 290, 734. 88 | |
| 1200 L Street Corporation stock_____ | | 85, 000. 00 |
| Northern Excavating Company stock____ | 4, 894. 50 | |
| Partner's capital accounts after additional contributions of capital__ | $46, 578. 88 | $13, 681. 00 |
| Distribution in kind on dissolution of Brady-Swalling Company: | | |
| Assets: | | |
| Coffey House Corporation stock_ | | $290, 734. 88 |
| 1200 L Street Corporation stock_____$85, 000. 00 | | |
| Northern Excavating Company stock____ | | 4, 894. 50 |
| Total Assets_ $85, 000. 00 | | 295, 629. 38 |
| Liabilities Assumed_____ 38, 421. 12 | | 281, 948. 38 |
| Net Assets Distributed_____ | $46, 578. 88 | $13, 681. 00 |
| Capital accounts after distribution in kind: | $—0— | $—0— |

The books of the Brady Construction Company show the following:

| | December 31, 1954 Debit | Credit |
|---|---|---|
| Investment—Corporation Stocks___ | $290, 734. 88 | |
| C. T. Brady—drawing_____ | | $290, 734. 88 |
| To credit C. T. Brady with value of following stocks contributed to Partnership July 15, 1954: 126 shares Coffey House Corporation stock_____ | $290, 734. 88 | |
| Brady-Swalling transfers_____ | 290, 734. 88 | |
| Investment—Corporation Stocks_ | | 290, 734. 88 |
| To record contribution 126 shares The Coffey House Corporation stock to Brady-Swalling Co. | | |
| Investment—Northern Excavating Company stock_____ | 4, 894. 50 | |
| Clearing account_____ | | 4, 894. 50 |
| To record tax basis of Northern Excavating Stock received on final settlement Brady-Stateside (per RAR 2/10/55) | | |
| Brady-Swalling transfers_____ | 4, 894. 50 | |
| Investment—Northern Excavating Co_____ | | 4, 894. 50 |
| To record stock contributed to Brady-Swalling Company joint venture | | |
| Investment—Corporation stocks___ | 85, 000. 00 | |
| Accounts payable_____ | | 38, 421. 12 |
| Brady-Swalling transfers_____ | | 46, 578. 88 |
| To record distribution 127 shares 1200 L Street Corporation stock, and assumption of following liabilities on liquidation Brady-Swalling Company: | | |
| Anchorage Sand & Gravel_____ | $1, 433. 76 | |
| Charles Elm_____ | 340. 00 | |
| Arnold Air Service_____ | 1, 647. 36 | |
| Architect fees_____ | 35, 000. 00 | |
| Total_____ | $38, 421. 12 | |
| Accounts payable_____ | | 35, 000. 00 |
| Investment—Corporation stocks_ | | 26, 771. 60 |
| Miscellaneous income_____ | | 8, 228. 46 |
| To record payment of liability by transfer of 40 shares 1200 L Street Corporation stock | | |

It is apparent from the stipulation of the parties in this case that one of the important purposes of the settlement reached on July 13, 1954, incorporated in a written agreement on July 15, 1954, and

thereafter carried out in accordance with its terms, was to separate the future activities of Ted Brady from those of his former associates, Swalling and Clawson, and at the same time to separate the activities of BC, in which Ted was a partner, from those of the B–S joint venture and of Swalling and Clawson. The various steps involved in this agreement were all closely interrelated. It is proper to assume that no one of those steps would have been taken except as a part of this overall arrangement for settlement of the various interests of the parties to the settlement agreement. Consequently, the position taken by the Commissioner in determining the deficiencies in this case was proper.

Ted owned 126 shares of the stock of Coffey House Corporation, which had a basis to him of $37,500. He surrendered his ownership of those shares in connection with and in order to bring about the settlement. Ted, Lena, and Ben, "individually and as copartners doing business as BRADY CONSTRUCTION Co.," were referred to in the written agreement of July 15, 1954, as "First Parties." Paragraph 2 of the agreement recited, "First Parties agree to contribute to the BRADY-SWALLING COMPANY 126 shares of common stock of the COFFEY HOUSE CORPORATION, and Second Parties agree to contribute to the said partnership [1] 127 shares of common stock of the 1200 L STREET CORPORATION."

Exhibit 22–V, attached to the stipulation, is a letter on the letterhead of BC, dated August 15, 1955, signed by Lena and Ben and addressed to Kenneth L. Wall. It is stated in the letter that Ted "did contribute" Coffey House Corporation stock owned by him to BC, which then used those shares as a contribution to the joint venture B–S, and it was the intention of Lena and Ben at that time that Ted "should receive full credit for any such assets contributed, and you may consider this letter as your authority to credit the capital account of that partner for the full value of such assets," in connection with the closing of the books of BC and the preparation of its Federal income tax returns for 1954.

This instruction, given 13 months after the event, appears to be contra to the entry made contemporaneously on the partnership books crediting the $290,734.88 to Ted's drawing account. Obviously it was credited to some account of his on the partnership books, and he alone received the credit for the amount thus realized from the disposition of the 126 Coffey House shares. Furthermore, the result is the same whether Ted transferred the Coffey House shares to the BC partnership or directly to B–S in the settlement, for the fact of the matter is that in the same all-inclusive transaction and practically simultaneously, he parted with the shares, they were used in

---

[1] The word "partnership" is used erroneously as this was a joint venture and the word "contribute" has no binding significance.

the settlement at a value of $290,734.88, that amount exceeded his $37,500 basis for the shares by $253,234.88, the amount of the long-term capital gain which the Commissioner has taxed to Ted, and $290,734.88 was credited to Ted's account on the books of BC. Obviously a profit of $253,234.88 was realized on the disposition of the 126 shares of Coffey House Corporation stock which Ted had owned just prior to the settlement. The entire profit, even if realized by the BC partnership, was included in the credit to Ted on the BC partnership books and is taxable to him as his recognized and agreed distributive share of that particular profit. This is apparently the way the Commissioner regarded it. If, however, it is right to look through form to substance and to hold for all practical purposes that Ted disposed of the shares, the result is the same, since Ted received credit for the full value of the shares in the settlement accounting and should be taxed on the full amount of the gain resulting from that disposition of those shares.

*Decision will be entered for the respondent.*