**Dr. Warren B. DeMINK and Mrs. Helen DeMink, Defendants-Appellants,**

v.

**UNITED STATES of America, Plaintiff-Appellee.**

No. 26221.

United States Court of Appeals, Ninth Circuit.

Sept. 21, 1971.

Nathan J. Neilson (argued), Frank G. King (argued), of Neilson & King, Los Angeles, Cal., for defendants-appellants.

Gary R. Allen (argued), Dept. of Justice, Johnnie M. Walters, Asst. Atty. Gen., Washington, D. C., for plaintiff-appellee.

Before BARNES and ELY, Circuit Judges, and SMITH, District Judge.*

BARNES, Circuit Judge:

This is an appeal from a judgment of the District Court denying a Complaint for Refund of Taxes, amounting to $23,967.03 claimed to have been overpaid by taxpayers for the year 1958, together with interest paid on said taxes to the government (amounting to $9,347.14), and the usual interest and costs.

Jurisdiction in the District Court was based on 26 U.S.C. § 7422; 28 U.S.C. § 1346(a) (1); 28 U.S.C. § 1402(a) (1); and the Internal Revenue Laws of the United States. This Court has jurisdiction under 28 U.S.C. § 1291, et seq.

Two issues were presented to the District Court, sitting without a jury—*first*: "Whether Dr. DeMink had any basis in the $64,037.79 promissory note issued to him by Hospital Properties, Inc. in 1957, and subsequently transferred by him to Mrs. Helen Richardson as part of the Settlement Agreement of September 13, 1958", and *second*:

* Honorable Russell E. Smith, Chief Judge, District of Montana, Missoula, Montana, sitting by designation.

"Whether the transfer of the $64,037.79 note as part of the September 13, 1968 Settlement Agreement, along with the cancellation of certain other corporate indebtedness resulting from personal advances toward operating expenses of approximately $12,000 should be treated as a deductible cost of compromise, or as part of Dr. DeMink's basis in computing long term capital gain." [C.T. 208].

The first issue was decided in favor of the taxpayers, the second in favor of the government. The government first appealed, the taxpayers cross-appealed; the government withdrew its appeal, leaving it as sole appellee and the taxpayers as sole appellants, with only the second issue before us on this appeal.

The basis of the trial court's decision was its Conclusions of Law X and XI [C.T. 250] that the September 13, 1958 Settlement Agreement was "a sale transaction", and not "a compromise of litigation." If it were a compromise of litigation incurred as an ordinary and necessary expense in carrying on a trade or business, it would be deductible. [§ 162(a), 1954 Internal Revenue Code].

 In coming to this conclusion that the agreement was "a sale transaction", and not "a compromise of litigation", the trial court relied primarily on Brady v. Commissioner, 35 T.C. 311 (1960). That is the sole authority cited for Findings X and XI, which reads as follows:

"X—Whenever pursuant to the objective understanding of the concerned parties, all transactions, exchanges, sales, relinquishments and undertakings are interrelated and mutually interdependent, particular items part of the composite package may not be isolated for separate and distinct application of the internal revenue laws. Brady v. Commissioner, 35 T.C. 311 (1960)."

"XI—Therefore, a sale transaction including all of Dr. DeMink's interest in the various joint business interests he had with Dr. Richardson occurred by virtue of the Settlement Agreement of September 13, 1958."

We are of the opinion that the issue then before the District Court, and now here, cannot be so easily decided. We agree with the government that "the simple fact that a settlement transaction was involved does not provide an automatic answer" (that this *was* only and strictly a compromise settlement, and *not* a sale transaction). We likewise agree with the taxpayer that this agreement was more than a "sale transaction" alone.

In *Brady, supra,* the value of its authority is complicated, if not obscured, by the fact the bookkeeping instructions given by one party (Brady Construction Co.), was "given 13 months after the event (which), appears to be contra to the entry made contemporaneously on the partnership books." The original entries credited $290,734.88 to Ted's (Brady's) *drawing* account. The later entry credited the large figure to Ted Brady's *capital* account.

Looking to the substance of the transaction, the Tax Court found the cost basis of the shares transferred by Brady was $37,500; that "he parted with the shares, they were used in the settlement at a value of $290,734.88", that the difference was what Brady realized on the disposition of the stock "which he had owned just prior to the settlement."

*Whether a business expense deduction flows from a particular settlement requires an analysis of the transaction involved to determine whether in fact it generated ordinary and necessary expense of carrying on a trade or business.*

As we understand the oral argument had before us, counsel for appellants have retreated from their original position that the "primary motivation" of the taxpayer constitutes the test, as originally outlined in Anchor Coupling Co., Inc. v. United States, 69–1 U.S.T.C. § 9347; and other cases. That Tax Court opinion was overruled by the Seventh Circuit (427 F.2d 429).

The government in *Anchor* urged that the primary purpose test was no longer appropriate, in light of United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L. Ed.2d 570 (1963); Woodward v. Commissioner of Internal Revenue, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970); and United States v. Hilton Hotels Corp., 397 U.S. 580, 90 S.Ct. 1307, 25 L.Ed.2d 585 (1970). The Seventh Circuit stated:

"The Supreme Court reversed our dicision in *Hilton Hotels* [410 F.2d 194] and affirmed the Eighth Circuit's decision in *Woodward* [410 F.2d 313],[1] In so doing the Court held that the test to be applied in determining whether costs are incurred in the acquisition of a capital asset is a simple 'inquiry whether the origin of the claim litigated is in the process of acquisition itself.' Woodward v. Commissioner [of Internal Revenue], *supra*, 90 S.Ct. at 1306. The Court rejected the application of the primary purpose test in this area * * * As the Court recognized, this approach fully comports with 'objective' principles of deductibility established in Gilmore." [427 F.2d 429 at p. 432].

Chief Judge Swygert, stating "the better rule" in reliance upon *Gilmore, supra,* said:

"Accordingly, we hold that the origin and character of the claim with respect to which a settlement is made, rather than its potential consequences on the business operations of a taxpayer is the controlling test of whethet a settlement payment constitutes a deductible expense or a nondeductible capital outlay." [427 F.2d 429 at p. 433]

We recognize that the trial judge in trying this case below did not have the advantage we now have—the subsequent decisions of the Supreme Court in Woodward v. Commissioner of Internal Revenue, *supra,* and United States v. Hilton Hotels Corp., *supra,* as well as the appellate reversal of the original *Anchor* case. We disagree with the Court's Conclusions of Law X and XI, that there could be no allocation of the items of a composite package of exchanges, sales and relinquishments. We hold that Conclusions X and XI are erroneous as a matter of law, and that the judgment based thereon must be reversed.

We remand to the district court to permit evidence, if any can be produced, to prove how much, if any, of the amout paid by appellants was in settlement of the various law suits involved and/or other existing claims, which can be established as being ordinary and necessary expenses in the carrying on of a trade or business.

In this connection, we note the approach taken by the Second Circuit in reversing the Tax Court [62–1 U.S.T.C. § 9421] in a somewhat similar case [Ditmars v. C. I. R., 302 F.2d 481]. As in *Ditmars,* once we have determined the trial judge may have been in error in failing to consider the possibility of allowing some amount as settlement expense, the taxpayer is entitled to attempt to prove there should be an allocation between deductible portions and non-deductible portions of the payments made.

The record before us is far from complete even as to the nature of the litigation settled, for only a portion of the pleadings respecting each piece of litigation is in this record: "only the captions and prayers, and not the allegations, of the complaints were admitted into evidence." (Government's Brief).

Taxpayers clearly have the burden of establishing their claim to a deduction on remand. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933).

By this reversal and remand for further proceedings in accordance with this opinion, we do not undertake to express any opinion of our own as to the merits of the litigation, or even that evidence can be produced that would merit an al-

---

1. Comma appears in original quotation.

location. Further, the District Court may take such further testimony, if any, as it deems proper, or needs. In any allocation ordered, we recognize, as did the court in *Ditmars, supra,* that "a rough approximation is all that can be expected." (302 F.2d p. 488).

Reversed and remanded for further proceedings.