**HILTON HOTELS CORPORATION,**
Plaintiff-Appellee,

v.

**UNITED STATES of America,**
Defendant-Appellant.

**No. 17124.**

United States Court of Appeals
Seventh Circuit.
April 15, 1969.

Thomas A. Foran, U. S. Atty., Chicago, Ill., Mitchell Rogovin, Asst. Atty. Gen., Stuart A. Smith, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., Lee A. Jackson, Gilbert E. Andrews, Martin T. Goldblum, Attys., Dept. of Justice, Washington, D. C., for appellant; Richard A. Makarski, Asst. U. S. Atty., of counsel.

Milton A. Levenfeld, Chicago, Ill., Robert M. Levin, Levenfeld, Kanter, Baskes & Lippitz, Chicago, Ill., for appellee.

Before HASTINGS, Senior Circuit Judge, and KILEY and KERNER, Circuit Judges.

HASTINGS, Senior Circuit Judge.

The United States appeals from a district court decision in a refund suit brought by taxpayer Hilton Hotels Corporation (Hilton). The sole issue raised by this appeal [1] is whether the district court erred, as the Government contends, in holding that expenditures incurred by Hilton in connection with an appraisal proceeding to value the stock of dissenting shareholders in a merged corporation are currently deductible ordinary and necessary business expenses. The Government urges that such expenditures are nondeductible capital outlays.

The relevant facts were stipulated by the parties and adopted by the lower court. They may be summarized in the following manner.

On September 2, 1953, Hilton owned 325,370.5 of the 366,040.75 issued shares of the Hotel Waldorf-Astoria Corporation (Waldorf); the remaining 40,670.25 shares of Waldorf were owned by shareholders other than Hilton or Waldorf.

Contemplating a merger, Hilton retained Standard Research Consultants, Inc. (Standard) to prepare a merger study to determine a fair basis of exchange of Hilton stock for the remaining 40,670.25 shares of Waldorf. Standard concluded that a fair exchange ratio would be 1.25 shares of Hilton common stock for each remaining share of Waldorf stock.

On November 12, 1953, Hilton and Waldorf entered into an agreement of merger which provided that Hilton would be the surviving corporation and that 1.25 of Hilton's shares would be offered for each of the remaining 40,670.25 shares of Waldorf.

The holders of over two-thirds of the stock of Hilton and Waldorf voted in favor of the merger on December 28 and 29, 1953. Prior to this vote of approval, however, the holders of 20,221 shares of Waldorf filed with Waldorf, pursuant to § 91 of the New York Stock Corporation Law,[2] McKinney's Consol.Laws, c. 59, their written objections to the proposed merger and demanded payment for their stock.

On December 31, 1953, the merger agreement and the certificate of consolidation were filed and recorded with the Secretary of State of New York in accordance with the relevant provisions of § 91. Thereafter and pursuant to § 21, Subdivision 1, of the New York Stock Corporation Law,[3] Hilton offered to the objecting holders of the Waldorf stock a

---

1. One of the two issues originally presented in this case was settled by the parties.

2. Section 91 reads in relevant part:
   "7. Any stockholder * * * included in such consolidation, not voting in favor thereof, may object * * * and demand payment for his stock, at any time prior to the vote * * * The objecting stockholder or the corporation shall have the right to have such stock appraised and paid for in the manner provided, and subject to the conditions imposed by section twenty-one. * * *."

3. Section 21 reads in relevant part:
   "1. In the event that the stockholders of a corporation have taken action pursu-

payment of $24.54 for each share of the remaining 20,221 shares. The Hilton offer was rejected, and on February 11, 1954, pursuant to § 21,[4] the dissenting holders commenced appraisal proceedings in the Supreme Court for the County of New York to determine the value of their shares of Waldorf. These proceedings continued until June 14, 1955, when the New York court approved the parties' settlement of the valuation dispute and ordered the appraisal proceedings terminated.

This suit presents the problem of characterizing for the purpose of taxation the nature of the expenses incurred by Hilton in connection with the appraisal proceeding.

■ It is axiomatic that if the Hilton expenditures are deemed to have been incurred, as the Government urges, in corporate reorganization or recapitalization they are not deductible. General Bancshares Corp. v. C.I.R., 8 Cir., 326 F.2d 712, 715, cert. denied, 379 U.S. 832, 85 S.Ct. 62, 13 L.Ed.2d 40 (1964) and cases cited therein. It is equally true, however, that if such expenditures are held to be ordinary and necessary business expenses they are deductible. Int. Rev.Code of 1954, § 162.

The line of demarcation between the deductible and the nondeductible expenditure is frequently difficult to perceive because the " * * * decisive distinctions [between the two] are those of degree and not of kind." Welch v. Helvering, 290 U.S. 111, 114, 54 S.Ct. 8, 9, 78 L. Ed. 212 (1933). The applicable rule generally held to govern in such situations is the *primary purpose* test. Rassenfoss v. Commissioner of Internal Revenue, 7 Cir., 158 F.2d 764, 767 (1946); Manufacturers Hanover Trust Co. v. United States, 160 Ct.Cl. 582, 312 F.2d 785, 789, cert. denied, 375 U.S. 880, 84 S.Ct. 150, 11 L.Ed.2d 111 (1963).

In the instant case, we are satisfied the district court appropriately considered and applied the primary purpose doctrine and affirm its decision which held that the Hilton expenditures, arising out of the appaisal proceedings, were deductible as ordinary and necessary business expenses. Hilton Hotels v. United States, D.C.N.D.Ill., 285 F.Supp. 617 (1968).

In reaching its decision, the district court found that the Hilton-Waldorf merger became effective under New York law upon filing the Certificate of Consolidation with the Secretary of State.[5] It further found under New York law that the objecting Waldorf holders had *no interest other than to receive payment of the fair value of their stock*[6] and that

ant to [section] * * * ninety-one * * * and if any stockholder has objected to such action and demanded payment for his stock as provided in * * * section ninety-one * * * the corporation, * * *, shall mail * * * to such objecting stockholder * * * a written offer to pay for such stock in cash at a price deemed by the corporation to be the value thereof; * * *."

4. Section 21 reads in relevant part:
"3. If the corporation shall fail to make an offer within the time specified in subdivision one hereof, or if the objecting stockholder shall fail to accept an offer from the corporation within twenty days after the mailing * * *, either such stockholder or the corporation may petition the supreme court, at any special term thereof held within the judicial district in which the principal office of the corporation is

situated, to determine the value of such stock."

5. Section 91 of the New York Stock Corporation Law reads in material part:
"9. The consolidation authorized by the provisions of this section shall become effective for all purposes of the laws of this state upon filing in the office of the secretary of state the certificate [of consolidation] * * *."

6. Section 21 of the New York Stock Corporation Law provides:
"6. Any stockholder demanding payment for his stock shall have no right to receive any dividends or distributions payable to holders of such stock of record after the close of business on the day next preceding the date of the stockholders' vote in favor of the action to which such objection was made, and upon such vote shall cease to have any other rights of a stockholder of the cor-

the *sole purpose* of the appraisal proceedings was to determine the fair value of the objecting holders' shares in Waldorf. As a result of such findings, the court concluded that the expenses experienced by Hilton in connection with such proceedings were not capital in nature and were therefore deductible as ordinary and necessary business expenses. We agree.

Like the district court, we feel that the rationale of Smith Hotel Enterprises, Inc. v. Nelson, D.C.E.D.Wis., 236 F.Supp. 303 (1964) is germane to the instant case. In *Smith*, the corporate taxpayer received an offer to purchase substantially all its assets. One shareholder objected to the offer and pursuant to the controlling state statute demanded from the corporation payment of the fair value of her shares. Failing to reach an agreement with the corporation as to the value of her shares, the dissenting shareholder petitioned the appropriate state court to determine their fair value. The taxpayer deducted, as an ordinary and necessary business expense, the expenditures it incurred in the state court valuation proceeding. The court upheld the deductibility of these expenditures upon concluding that " * * * the primary purpose of the state litigation * * * was a determination of the fair value of the shares * * *," and that the taxpayer's primary purpose in the state litigation was to keep its liability to a minimum. 236 F.Supp. *supra* at 305–306.

■ Upon considering the objectives of the appraisal proceeding in this case, the expenses incurred by Hilton in connection therewith should not be characterized as being capital in nature. It is apparent the proceeding was not necessary to the consummation of the merger nor did it function primarily to permit the acquisition of the objecting holders' shares. Rather, as in the *Smith* case, the paramount purpose of the appraisal proceeding was to determine the fair

value of the dissenting stockholders' shares in Waldorf.

Our conclusion in this case obviously is a narrow one related specifically to a factual situation controlled by New York statutes. In general, authorities cited by the Government concern circumstances distinguishable on their facts from the case at bar.

The judgment of the district court is affirmed.

Affirmed.

poration in respect to such stock, *except the right to receive payment for the*

*value thereof * * *."* [Emphasis supplied.]