UNITED STATES *v.* HILTON HOTELS CORP.

No. 528.   Argued February 26, 1970—
Decided April 20, 1970

*Assistant Attorney General Walters* argued the cause for the United States. With him on the brief were *Solicitor General Griswold, Matthew J. Zinn, Gilbert E. Andrews,* and *Stuart A. Smith.*

*Milton A. Levenfeld* argued the cause for respondent. With him on the brief were *Burton W. Kanter* and *Richard M. Kates.*

MR. JUSTICE MARSHALL delivered the opinion of the Court.

This is the companion case to *Woodward* v. *Commissioner, ante,* p. 572, and presents a similar question involving the tax treatment of appraisal litigation expenses.

In 1953 taxpayer Hilton Hotels Corporation, which owned close to 90% of the common shares of the Hotel Waldorf-Astoria Corporation, determined to merge the two companies. Hilton retained a consulting firm to prepare a merger study to determine a fair rate of exchange between Hilton stock and Waldorf stock. After this study was completed, on November 12, 1953, Hilton and Waldorf entered into a merger agreement under which Hilton would be the surviving corporation, and 1.25 shares of Hilton stock would be offered for each outstanding Waldorf share not already held by Hilton. On December 28, Hilton voted its Waldorf stock to approve the merger by the requisite majority. Prior to the vote, the holders of about 6% of the Waldorf shares had filed with Waldorf their written objections

to the merger, and demanded payment for their stock, pursuant to § 91 of the New York Stock Corporation Law.

On December 31, 1953, Hilton filed the merger agreement and the certificate of consolidation with the Secretary of State of New York, thus consummating the merger under New York law. On January 7, 1954, Hilton made a cash offer to the dissenting Waldorf shareholders, which they rejected. The dissenters then began appraisal proceedings in the New York courts, pursuant to § 21 of the New York Stock Corporation Law.

Between January and May 1954, Hilton asked its consulting firm to value the Waldorf stock as of December 27, 1953, the day prior to the Waldorf shareholders' vote approving the merger. Hilton also obtained the services of lawyers, and other professional services, in connection with the appraisal litigation. The appraisal proceeding was finally terminated in June 1955, when the state court approved a settlement agreed to by the parties.

Hilton deducted the fees paid to the consulting firm, and the cost of legal and other professional services arising out of the appraisal proceeding, as ordinary and necessary business expenses under § 162 of the Internal Revenue Code of 1954, 26 U. S. C. § 162. The Commissioner of Internal Revenue disallowed the deduction on the ground that the payments were capital expenditures. Hilton paid the tax and sued for a refund in the District Court. In the course of that suit, Hilton conceded, and the court held, that the payments to the consulting firm for the pre-merger determination of fair value were a nondeductible capital outlay. But the District Court held that the fees and costs related to the post-merger appraisal proceeding itself were deductible. 285 F. Supp. 617 (D. C. N. D. Ill. 1968). The Court of Appeals

affirmed, 410 F. 2d 194 (C. A. 7th Cir.), and we granted certiorari, 396 U. S. 954 (1969). We reverse.

The Court of Appeals recognized that expenses of acquiring capital assets are capital expenditures for tax purposes. However, the court believed that the "primary purpose" test of *Rassenfoss* v. *Commissioner,* 158 F. 2d 764 (C. A. 7th Cir. 1946), should be applied to determine whether the appraisal proceeding was sufficiently related to the merger or the stock acquisition. Noting that "the proceeding was not necessary to the consummation of the merger nor did it function primarily to permit the acquisition of the objecting holders' shares," the court found that "the paramount purpose of the appraisal proceeding was to determine the fair value of the dissenting stockholders' shares in Waldorf." 410 F. 2d, at 197.

As we held in *Woodward, supra,* the expenses of litigation that arise out of the acquisition of a capital asset are capital expenses, quite apart from whether the taxpayer's purpose in incurring them is the defense or perfection of title to property. The chief distinction between this case and *Woodward* is that under New York law title to the dissenters' stock passed to Waldorf as soon as they formally registered their dissent, placing them in the relationship of creditors of the company for the fair value of the stock,[1] whereas under Iowa law passage of title was delayed until after the price was settled in the appraisal proceeding.[2]

---

[1] Section 91, subd. 9, of the New York Stock Corporation Law provides that a corporate consolidation becomes effective upon the filing of the requisite certificate. Section 21, subd. 6, of the same law provides that as of the time of a merger vote, a dissenting shareholder loses all rights as such, except the right to receive payment for the value of his shares.

[2] Iowa Code § 491.25 (1966) provides that majority shareholders voting for renewal "shall have three years from the date such

This is a distinction without a difference. The functional nature of the appraisal remedy as a forced purchase of the dissenters' stock is the same, whether title passes before or after the price is determined. Determination and payment of a price is no less an element of an acquisition by purchase than is the passage of title to the property. In both *Woodward* and this case, the expenses were incurred in determining what that price should be, by litigation rather than by negotiation. The whole process of acquisition required both legal operations—fixing the price, and conveying title to the property—and we cannot see why the order in which those operations occurred under applicable state law should make any difference in the characterization of the expenses incurred for the particular federal tax purposes involved here.

Hilton also argues that the appraisal costs cannot be considered as its own capital expenditures, since Waldorf acquired the shares (on December 28) before the merger (on December 31). This argument would carry too far. It is true that title to the dissenters' stock passed to Waldorf before that corporation was merged into the surviving corporation, Hilton. But the stock was never paid for by Waldorf; rather Hilton assumed all of Waldorf's debts under the merger agreement, and finally paid for the stock after the appraisal proceeding was settled. If Waldorf's acquisition of the minority stock interest was not a capital transaction of Hilton's, then Hilton's payment for the stock itself, as well as the expenditures made in fixing that price, would lose its

---

action for renewal was taken in which to purchase and pay for the stock voting against such renewal . . . ." There is no intimation in the statute itself, nor in Iowa cases construing it cited by petitioners in *Woodward, supra,* that dissenters lose any of their rights as shareholders, or that title passes to the majority shareholders, prior to the actual purchase of the dissenters' shares.

character as a capital expenditure of Hilton's. But Hilton concedes that the payment for the stock was a capital expenditure on its part. The debts that Hilton inherited from Waldorf retained their capital or ordinary character through the merger, and so did the expenditures for fixing the amount of those debts.

In short, the distinctions urged between this case and *Woodward* are not availing. The judgment of the Court of Appeals is reversed, and the case is remanded to the District Court with directions to dismiss the complaint.

*It is so ordered.*