Lawrence J. PLYM and Mary L. Plym,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. CA 5443.

United States District Court,
W. D. Michigan, S. D.

Nov. 30, 1971.

Platt W. Dockery, John D. Tully, Warner, Norcross & Judd, Grand Rapids, Mich., for plaintiffs.

John P. Milanowski, U. S. Atty., Grand Rapids, Mich., for defendant.

SUPPLEMENTAL OPINION

ENGEL, District Judge.

This memorandum opinion supplements the remarks made by the court in granting defendant's motion for a directed verdict at the close of plaintiffs' case. As the court indicated in open court, the sole issue is whether plaintiff taxpayers, Lawrence J. and Mary L. Plym,[1] were entitled to take as a deduction under 212 of the Internal Revenue Code of 1954, the payment of $75,000.00 to the firm of Spingarn, Heine and Company, New York stockbrokers, as an ordinary and necessary expense . . . . either (1) "for the production or collection of income", or (2) "for the management, conservation, or maintenance of property held for the production of income ;".

For the purpose of determining whether defendant's motion should be granted, the facts in evidence as

---

1. Mary L. Plym is plaintiff in name only since she signed the income tax return jointly with her husband.

presented by plaintiffs and all legitimate inferences which could be drawn therefrom must be construed in the light most favorable to the plaintiffs. Gray v. International Ass'n. of Heat and Frost, 447 F.2d 1118 (6th Cir. 1971). In this respect, the motion for a directed verdict may be granted only if it appears that plaintiff is not entitled to recover as a matter of law.

▇ The dispute involves the $75,000.00 payment made by Mr. Plym which defendant contends is either a non-deductible capital expense under section 263 of IRC 1954, arising out of the merger plans of Kawneer or is non-deductible under Sections 212 and 162 since payment was made by Mr. Plym, personally although the obligation was one owed by the corporation Kawneer, of which he was president. This type of dispute has occasioned much litigation in a variety of factual settings. See e.g. United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963) and Spangler v. CIR, 323 F.2d 913 (9th Cir. 1963).

The facts, construed in a light most favorable to plaintiff reflect the following: In 1962 Kawneer Corporation and Kaiser Aluminum Corporation attempted to consummate a merger. However, the Justice Department blocked the proposed merger, claiming it would violate the Clayton Act. Shortly thereafter, Mr. Plym, who was then the owner of approximately one-third of the stock of Kawneer, and who, with his immediate family, controlled slightly over one-half of the stock, directed Mr. Witmar, the Secretary and trusted employee of Kawneer, to contact the major non-family Kawneer stockholders in order to reassure them of Kawneer's good business health in spite of the failure of the proposed merger. One such stockholder was the New York stock brokerage firm of Spingarn, Heine & Company. It is undisputed that during the course of discussion between Mr. Witmar and the representative of Spingarn, Mr. Jerome Pustilnik, the latter inquired whether Kawneer was still interested in a merger. Mr. Witmar's response was that the company would be interested in what Mr. Pustilnik might have to say. Mr. Pustilnik indicated that he had in mind a party who might be interested. He further inquired about the possibility of drafting a written agreement granting him a fee for getting the parties together. At this point, Mr. Witmar declined to discuss the matter further although the fact remains undisputed that Mr. Witmar stated that Kawneer had "always honored payment for services rendered". At a later time during the same trip, Mr. Pustilnik did in fact introduce Mr. Witmar to representatives of another party, American Metal Climax (Amax). At this point, the court accepts as true plaintiffs' assertions that neither Mr. Pustilnik nor any other members of his firm performed any further services in connection with the merger and further that Mr. Plym's attorney, Mr. White researched Kawneer's liability under an oral agreement for compensation which Mr. Pustilnik asserted and was of the opinion that such an agreement would be void under New York's statute of Frauds.

It is further undisputed that some months later, negotiations between Amax and Kawneer resumed. Earlier negotiations which had failed had been fully terminated. At these later negotiations, there was no further mention or thought given by Amax, Kawneer, or Mr. Plym of a potential claim by Spingarn for fees for having initially introduced Amax and Kawneer to each other, out of which meeting eventually produced a merger in 1962.

However, in July of 1962, after all the merger details of the proposed merger had been worked out, Spingarn presented its claim for fees. This claim, as construed in the light most favorable to plaintiffs' case, was viewed by Kawneer, Amax and Mr. Plym's attorney, Mr. White, as being legally unenforceable. Amax at first absolutely refused either to honor such a claim or to permit Kawneer to honor such a claim since a payment by Kawneer would deplete the as-

sets which Amax would be acquiring by the merger.

Nevertheless, Mr. White went to New York a few days before the proposed merger was to be consummated in an effort to dispose of this potentially harmful claim.[2] An agreement was reached whereby the claim of Spingarn, originally in an amount of approximately $1,000,000 and later reduced to $350,000 would be settled for $175,000. Amax was to pay $100,000 and Mr. Plym was to personally pay $75,000 to Spingarn upon the completion of the merger.

Mr. Plym subsequently paid the $75,000 claim and obtained a release from Spingarn. Thereafter, Mr. Plym sought to take a $75,000 tax deduction on his 1962 taxes as an ordinary and necessary expense under section 212 of the Internal Revenue Code of 1954.

Plaintiff has contended from the start of these proceedings that the stock which he received from Amax in exchange for his stock[3] in Kawneer, as a result of the statutory merger under section 263(a) (1) (A), did not result in the acquisition of a new capital asset "but a continuation of . . . . existing assets in Kawneer Company," thus precluding the possibility that his expenses incurred incident to the merger from being classified as capital expenses. Irrespective of the tax free consequences of the merger, however, plaintiff did receive new capital assets in the way of preferred stock in Amax. The issuance of such stock to the plaintiff gave rise to new rights in plaintiff and additional liabilities of Amax, specifically as set out in the merger agreement. Although Mr. Plym did receive these new capital assets, it was only as a result of the merger, and the merger itself is the relevant capital acquisition here.

Plaintiff claimed during the trial, and this court must accept as true, that there was danger of loss in the value of his extensive stockholdings should the merger not be consummated; and that his primary purpose in paying the $75,000 claim was to protect his investments and to improve the income to be expected from it, although the claim, as viewed by Amax, Kawneer and him, amounted to nothing less than legal blackmail or extortion and furthermore was outrageous not only in its amount, but also in the unethical manner in which it was asserted. However, the Supreme Court recently rejected the primary purpose doctrine as well as taxpayer's motive in ascertaining whether the expense is capital or not. In Woodward v. Commissioner, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970) and United States v. Hilton Hotels Corp., 397 U.S. 580, 90 S.Ct. 1307, 25 L.Ed.2d 585 (1970), petitioners urged that the Court adopt the "primary purpose" test which the court had used in suits dealing with "defending or perfecting title to property" and use that test in suits involving litigation expenses incurred in acquiring or disposing of a capital asset. The Court declined to follow petitioners' suggestion, stating that this type of case "involves the simpler inquiry whether the origin of the claim litigated is in the process of acquisition itself". (*Woodward* at page 578, 90 S.Ct. at page 1306). The Court went on to say that "a standard based on the origin of the claim litigated comports with this Court's recent ruling on the characterization of litigation expenses for tax purposes in United States v. Gilmore, 372 U.S. 39, [83 S.Ct. 623, 9 L.Ed.2d 578] (1963)." In that case "[t]he Court rejected a test that looked to the consequences of the litigation, and did not even consider the taxpayer's motives or purposes in undertaking defense of the litigation, but rather examined the origin and character of the claim against the taxpayer, and found that the claim arose out of the personal relationship of

2. The facts show that Amax would not merge unless this claim was disposed of.

3. Page one of the merger agreement contained the specific details concerning the convertibility and ratios in the exchange of Kawneer stock for Amax stock.

marriage." (at page 578, 90 S.Ct. at page 1306).

Although, in the strictest sense, Plym's expense may be characterized as something other than a litigation expense, the similarities justify treatment of his claim as was done in *Woodward* Here the origin and character of the claim which gave rise to the final compromise settlement arose by reason of the proposed merger of the two companies and that under the facts testified to by all of the witnesses, the merger could not be effected without first settling the claim of Spingarn.

■ However, plaintiff asserted in argument in opposition to defendant's motion for a directed verdict that there remained issues of fact which must be resolved by the jury; that it was a factual question whether the expenditures made by Mr. Plym were necessary and ordinary under the case law, e.g., Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); that while a portion of the sum paid may have been an expense of the merger, the jury could have found that the balance was a deductible expense; and that regardless of whether Kawneer could deduct the sum as an ordinary and necessary business expense under Section 162, Mr. Plym under this set of circumstances could deduct under Section 212 the payment of the obligation owed by another but paid by him in accordance with the holding in Lohrke v. Commissioner, 48 T.C. 679 (1967). *Lohrke*, plaintiff claims, establishes his right to a deduction even though it is an exception to the general rule that one may not claim as a deduction payment of an obligation which is not his own and which he has no obligation to pay. Assuming plaintiff is correct in his contention, *Lohrke* and its related cases are, however, in no way authority for the proposition that a taxpayer may deduct as an ordinary and necessary expense the payment of a debt, obligation or claim when that debt, obligation or claim is not one which the original debtor would be entitled to take, either under section 212 or 162, and this is exactly the case here.

■ As to the argument that the jury could have found that a portion of the expense was properly deductible, this court holds that the expense was not severable. There is not here a mixture of separate claims, one of which is deductible while the other is not. Rather, there is but a single claim made for services in getting the two companies together. This factual setting does not and could not warrant a finding as in Picker v. United States, 371 F.2d 486 (Ct.Cl., 1967), that the expense was Mr. Plym's in the management of his investments. Nor is the factual situation like that in Brown v. United States, 312 F. Supp. 286 (E.D.Mich.1970), which pertained to the restoration to the corporation of funds or assets unlawfully withdrawn therefrom, and in which corporation taxpayer held stock. The claim is divisible, if at all, only as it pertains to its reasonableness as payment for a finder's fee. According to Mr. Plym's testimony, he agreed to pay it, albeit in order to prevent the merger from collapsing. It is no more appropriate to entertain such an argument than it would be to claim that expenses of litigation ought never to have been incurred because the parties suing were correct and should not have been forced to sue. Similar arguments could be made with respect to attorney fees, stockbroker fees, appraisal fees and all other expenses which normally are incurred in connection with corporate mergers and which are customarily and normally treated as a capital expense. However, this does not alter the origin and character from which they arose. And as here, the expense has its origin in the proposed merger and is a capital expense under Section 263 of the Internal Revenue Code of 1954. Therefore, plaintiff is not entitled to a deduction of the $75,000 under Section 212 as a matter of law and accordingly the motion for directed verdict was properly granted.