ERNEST J. NAGY AND JANE H. NAGY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nagy v. Commissioner
Docket No. 3633-76.
United States Tax Court
T.C. Memo 1978-318; 1978 Tax Ct. Memo LEXIS 195; 37 T.C.M. (CCH) 1326; T.C.M. (RIA) 78318; August 15, 1978, Filed *195 Held, payments to acquire corporate stock are capital expenses under sec. 263, I.R.C. 1954. John L. Carey and Richard B. Urda, Jr., for the petitioners. Elsie Hall, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency of $ 66,906 *196 in petitioners' 1972 income tax. After concessions, the sole issue is whether certain payments were capital expenditures under section 263[1] or ordinary and necessary business expenses under sections 162 and 212. FINDINGS OF FACT Some of the facts were stipulated and are found accordingly. Ernest (hereinafter petitioner) and Jane Nagy, husband and wife, lived in South Bend, Indiana, when they timely filed their 1972 income tax return and when they filed their petition in this case. On June 28, 1966, petitioner, under Indiana law, incorporated his mobile home supplies business as E. J. Nagy & Associates, Inc. issuing 21 and 19 shares of stock to himself and Mrs. Nagy, respectively. In 1970, petitioner also owned a 50 percent equity interest in J.N.S. Realty, an Indiana joint venture. Petitioners' corporation leased a warehouse and its corporate offices in Elkart, Indiana, from J.N.S. Realty under a verbal agreement in effect for the period June 1, 1970 through June 1980. This agreement provided for annual rent of $ 42,000 and the corporation agreed to pay property taxes, insurance premiums *197 and maintenance costs. On July 12, 1971, E. J. Nagy & Associates, Inc., was merged into Riblet Products Corporation and continued its operations thereafter as the Nagy Division of Riblet. Under the merger, petitioners exchanged their shares for 129,801 shares of Riblet common stock. In addition, under an"earn out" provision, petitioners could earn an additional 129,801 shares of Riblet common stock if their former corporation exceeded a determined after-tax net earnings on December 31, 1971 and 1972. Petitioners earned no additional shares for the year ended December 31, 1971, but on March 7, 1973, they were awarded the full 129,801 shares for their former corporation's performance for the year ended December 31, 1972. Although Riblet shares were publicly traded, petitioners' 259,602 shares were not eligible to be so traded since they were unregistered; however, the merger agreement provided that until December 31, 1976, petitioners could require Riblet to register part or all of their shares, with Riblet paying up to $ 10,000 of the registration expenses. In addition, petitioners were granted unlimited "piggy-back" registration rights at Riblet's expense, excluding expenses *198 for petitioners' counsel, until December 31, 1976. The merger agreement also provided that petitioner would be employed by Riblet at $ 40,000 a year for three years during which time he would be in charge of Riblet's Nagy Division, his former corporation. In addition, petitioner was required to sign a five year noncompetition agreement. Riblet agreed to continue the lease between J.N.S. Realty and Nagy Division providing petitioner disposed of his interest in the joint venture within five years. On January 14, 1972, petitioner issued a document to the employees of the Nagy Division of Riblet which read as follows: To: All Participating Employees of E. J. Nagy & Associates. I have an opportunity to earn extra compensation from Riblet Products. Because of your past performance, I am sure that I can be successful in this endeavor if I have your help over and above your normal employment requirements to Riblet. It is my intention to personally compensate you for this extra effort during the coming year as well as to compensate you for your unstinting loyalty to me in any past operations. This compensation shall be earned by you and distributed by me on a personal basis *199 at my discretion based upon effort, attitude, efficiency, production and results. These extra earnings shall be above and beyond any income that you shall receive from Riblet Products. Those of you who have raises coming through the year shall receive them normally. Those of you that are on an incentive basis, such as commission salesmen, shall receive your agreed upon percentages regardless of this extra compensation. I am, therefore, hiring you personally to help achieve certain personal incomes for myself as well as yourselves. In no way, shape or form has this extra compensation that you will receive anything to do with Riblet Products. Riblet Products is fully aware that I am soliciting your extra effort to achieve these earnings. Kindest regards, /s/ Ernie Pursuant to this letter, petitioner paid $ 139,577 to and for twenty-six employees in the fourth quarter of 1972. Petitioner made no similar payments from 1973 to 1976. On May 16, 1972, petitioners sold 26,334 of their original 129,801 Riblet shares, which were registered under the "piggyback" arrangement, for $ 481,912. Their tax base in these shares was $ 816. Prior to the merger, petitioner's value not *200 only as an employee of E. J. Nagy & Associates, Inc., but also as a potential officer of Riblet was recognized by Robert Riblet, Chairman of the Board of Riblet. Petitioner served as General Manager of the Nagy Division in 1971, 1972 and 1973. In 1974, he was transferred to Ocala, Florida, where he managed the Southeast Mobile Home Supply Division of Riblet. On October 21, 1975, Ernest J. Nagy was elected as a director and as president and Chief Executive Officer of Riblet. Petitioner testified that he made the 1972 payments to Nagy Division employees to assist him in becoming president of Riblet and to secure a permanent lease with J.N.S. Realty.
Petitioner deducted the 1972 payments of $ 139,577 as business expenses on his 1972 joint return. Respondent disallowed the deduction in its entirety on the ground the expense was capital in nature. OPINION We must determine whether petitioner's 1972 expenditure of $ 139,577 to and for Nagy Division employees is deductible as an ordinary and necessary business expense under section 162. Petitioner, relying upon United States v. Generes,405 U.S. 93, 100-101 (1972), argues that the dominant motive of the expenditure *201 was to promote his corporate position in Riblet; therefore, he asserts the payments are deductible under section 162(a) as an ordinary business expense of a corporate executive carrying on the trade or business of being an employee. See Primuth v. Commissioner,54 T.C. 374, 377 (1970). Respondent, relying upon United States v. Hilton Hotels Corp.,397 U.S. 580 (1970), and Woodward v. Commissioner,397 U.S. 572 (1970), argues that since the origin of petitioner's expenditure is the acquisition of a capital asset, the amount represents a nondeductible capital expenditure under section 263.In citing these cases, we believe both parties have missed the point. The distinction between expenditures which are currently deductible and those which are capital in nature, is the primary function of the term "ordinary" in section 162(a). Commissioner v. Tellier,383 U.S. 687, 689-690 (1966); Iowa-Des Moines National Bank v. Commissioner,68 T.C. 872, 878 (1977), appeal docketed (8th Cir., January 31, 1978). The *202 controlling issue is whether the expenditure serves to create or enhance a separate and distinct asset which lasts beyond the end of the taxable year. Commissioner v. Lincoln Savings & Loan Assn.,403 U.S. 345, 354 (1971).If so, the expenditure represents a nondeductible capital expenditure within the meaning of section 263, regardless of the underlying motivation or the origin of the expenditure, Florida Publishing Co. v. Commissioner,64 T.C. 269, 280 (1975), affd. in unpublished opinion (5th Cir., April 25, 1977), reh. denied (5th Cir., May 24, 1977). Stock is of value in more than one taxable year and is a capital asset. United States v. Mississippi Chemical Corp.,405 U.S. 298, 310 (1972). Although petitioner's motive for making the expenditure in question may have been to promote his position as a corporate executive with Riblet, it nevertheless resulted in the acquisition of 129,801 Riblet shares. Petitioner's payments to Nagy Division employees were unquestionably designed to stimulate their productivity and enhance the Division's earnings. Petitioner must have felt that increased employee productivity was directly responsible *203 for Nagy Division's success in 1972 since, in his sole discretion, he voluntarily paid $ 139,577 to and for the employees in the fourth quarter of 1972. In fact, the Division earnings were high enough in 1972 to earn petitioner 129,801 shares of Riblet stock. The increased success of Nagy Division may have also enhanced petitioner's executive advancement in Riblet and this may have motivated petitioner in making the payments.But the fact remains that the payments were at least in part responsible for the increased earnings which directly resulted in petitioner acquiring stock. As a consequence, petitioner's motivation for the payment is irrelevant. In so finding we also reject respondent's legal analysis. Woodward v. Commissioner,supra, and United States v. Hilton Hotels, Corp.,supra, both dealt with capitalization of litigation expenses. The Supreme Court noted in both cases that the character of such expenses are governed by the origin of the claim litigated. Since both cases involved expenses of litigation which arose out of the acquisition of a capital asset, they were found to be nondeductible capital expenditures. The cases *204 did not use an origin of expense test but rather an origin of litigation test. Since there is not an expense of litigation involved here, we consider the legal standard inapplicable. Suffice it to say, when an expense directly results in the acquisition of a capital asset, it will be treated as a capital expense regardless of the taxpayer's motives in making the payment and regardless of the origin of the expense. Accordingly, we find that petitioner's 1972 expenditures of $ 139,577 payments to and for Nagy Division employees were capital expenditures under section 263(a). To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended.↩