KENNETH E. and PARMALINE L. FAIREY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fairey v. Commissioner
Docket No. 20014-80.
United States Tax Court
T.C. Memo 1982-219; 1982 Tax Ct. Memo LEXIS 525; 43 T.C.M. (CCH) 1169; T.C.M. (RIA) 82219; April 26, 1982. Kenneth E. Fairey, pro se. Beatrice M. Pearson, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent *526 has determined deficiencies in petitioners' Federal income taxes for the calendar years 1977 and 1978 in the respective amounts of $ 1,159 and $ 1,898. [1]
The issues for decision are: (1) whether petitioners may deduct transportation expenses incurred by petitioner husband for travel between his home and his place of employment; (2) whether petitioners correctly allocated the cost of a piece of improved real estate between the land and the buildings; and (3) whether petitioners are entitled to deduct the expenses of trips to various resorts at which petitioners spent some time investigating investment opportunities in real estate. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners are husband and wife who resided in Santa Maria, California, at the time their petition herein was filed. They filed joint income tax returns for 1977 and 1978 with the Internal Revenue Service Center, Fresno, California. Issue 1. *527 Travel Expenses
During the calendar years 1977 and 1978, Kenneth E. Fairey (hereinafter Kenneth) was employed by Howard P. Foley Company (hereinafter Foley) at the Diablo Canyon Project (hereinafter Diablo), a nuclear power facility then under construction, located 47 miles from petitioners' residence in Santa Maria. Kenneth was originally hired by Foley in October 1972, as a journeyman/wireman at Diablo. He was assigned to his job at Diablo by Local 639 of the International Brotherhood of Electrical Workers (hereinafter IBEW). In 1973 Kenneth was promoted to foreman and was employed as such until August 1974, when he was laid off as a result of a work stoppage at Diablo. One month later he was rehired as a journeyman/wireman, again through Local 639, and he was promoted to foreman shortly thereafter. In December 1974, Kenneth was promoted to general foreman, in which capacity he supervised the work of 44 men. He continued in that capacity through the end of 1978. The terms and conditions of employment of general foremen at Diablo were fixed by contract between Foley and IBEW, Local 619. The agreement between Foley and Local 639 did not contain a seniority clause, and *528 Kenneth could have been laid off by Foley at any time. Although employed at Diablo through Local 639, Kenneth's home local was IBEW, Local 413. Throughout his employment at Diablo, Kenneth had on file with Local 413 a request for work in Santa Maria. In the fall of 1978 he received word from Local 413 that a position had opened in Santa Maria, but he turned it down because it was only a two-day job. Kenneth drove from Santa Maria to work daily in his personal automobile, thereby incurring expenses of $ 3,196 in 1977, and $ 3,196 in 1978. Issue 2. Rental Property
On August 31, 1977, petitioners purchased, for $ 46,500, improved real property located at 516 Lincoln Street, Santa Maria, California (hereinafter sometimes referred to as the Lincoln Street property). The land (80 by 180 feet) was improved by a 2-story single family frame house (40 by 45 feet) and a garage, built circa 1890, and converted to 4 dwelling units in 1938. It was located in a rundown neighborhood composed of both residential and business properties. Petitioners received rental income of approximately $ 500 a month from the Lincoln Street property in 1977 and 1978. Kenneth testified that *529 at the time petitioners purchased the Lincoln Street property, a neighboring property--with a lot approximately one-half the size of the Lincoln Street property, which had improvements "that are nothing" and which rented for only $ 65 per month--sold for $ 18,500. Petitioners did not offer any other evidence, such as an appraisal, of the proper allocation between land and buildings on the Lincoln Street property. On their joint returns for 1977 and 1978, petitioners allocated 68.6 percent ($ 31,895) of their cost of the Lincoln Street property to the buildings, and 31.4 percent ($ 14,605) to the land. Issue 3. Vacation Expenses
During 1977 and 1978 petitioners owned 5 rental properties which in the aggregate contained 21 rental units. Petitioners intended that their business of being landlords would be their primary source of income upon Kenneth's expected retirement from the Union in 1983. In May 1977, petitioners traveled to Palm Springs, California, for some period of time, and spent one day there investigating a townhouse for possible purchase as investment real estate. In November 1977, petitioners spent one week in Reno, Nevada. The parties have stipulated *530 that this trip was intended primarily as a vacation. Notwithstanding, petitioners spent two days investigating real estate for possible investment. While there they attempted to purchase a five-acre lot improved by a barn, and deposited $ 500 with a realtor to be used in the event the purchase was consummated. This $ 500 was returned to petitioners after one week. In May 1978, petitioners spent three days investigating investment real estate in Palm Springs, California. In November 1978, petitioners traveled to Phoenix, Arizona, where they remained for eight days. One day was devoted to investigating investment real estate there. On June 16, 1979, petitioners bought two pieces of real property near Palm Springs. Both of these properties had been discovered and investigated by petitioners on their 1978 trip to Palm Springs. OPINION Issue 1. Travel Expenses
Petitioners contend that Kenneth's employment at Diablo was temporary, and thus that expenses incurred by Kenneth in traveling to and from Diablo are deductible as trade or business expenses under section 162(a). [2] Respondent argues that Kenneth's employment was not temporary, but indefinite in character, *531 and that his travel expenses are thus nondeductible personal expenses. In Turner v. Commissioner,56 T.C. 27 (1971), vacated and remanded on respondent's motion in an unpublished order (2d Cir., Mar. 21, 1972), we held that expenses incurred in commuting, whether to a temporary or indefinite job, are personal in nature and not ordinary and necessary expenses for purposes of section 162(a). [3]
Respondent has elected not to avail himself of this favorable precedent, and has conceded that Kenneth's travel expenses are deductible if his employment was temporary. We have defined temporary employment as employment *532 that can be expected to last only a short period of time. McCallister v. Commissioner,70 T.C. 505 (1978). Employment is not temporary if it is indeterminate in fact as it develops. Commissioner v. Peurifoy,254 F.2d 483 (4th Cir. 1957), affd. per curiam 358 U.S. 59 (1958). Even if an employee has no assurance of how long a job will last, that job is not temporary if he can reasonably expect it to last for a substantial or indefinite period of time. McCallister v. Commissioner,supra;Norwood v. Commissioner,66 T.C. 467 (1976). [4]
The record indicates that Diablo was a major construction project requiring many years to complete and that, except for one month during 1974 when construction at Diablo had been completely shut down due to a work stoppage, petitioner had been employed there steadily from October 1972 through 1978. Moreover, in 1978 Kenneth turned down a two-day job close to his home in Santa Maria in order to continue his employment at Diablo, an indication that he had some confidence his job at Diablo would continue. *533 On these facts, we find that Kenneth's employment was not temporary, but was indeterminate in nature; we therefore hold for respondent on this issue. [5]
Issue 2. Rental Property
Petitioners and respondent are unable to agree on the proper allocation between land and the buildings situated on petitioners' Lincoln Street property. Respondent asserts that the correct allocation is 73.6 percent to land and 26.4 percent to the buildings. Petitioners applied respective allocations of 31.4 percent and 68.6 percent. Section 167(a) provides, inter alia, that *534 a deduction shall be allowed for depreciation, representing a reasonable allowance for the wear and tear on property used in a trade or business or held for the production of income. With respect to real estate the depreciation allowance, however, applies only to the improvements and not to the land itself. Sec. 1.167(a)-2, Income Tax Regs.
Respondent's determination is presumptively correct, and petitioners have the burden of proving that it is erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. We find, on the record before us, that petitioners have not met their burden of proof. The only substantial evidence presented by petitioners, intended to support their allocation, is Kenneth's testimony that the lot adjoining the Lincoln Street property, approximately one-half its size and improved by buildings that were worth "nothing," was sold for $ 18,500 at the time petitioners purchased the Lincoln Street property. In fact we find that this testimony supports respondent's allocation since that amount is greater than the $ 14,605 allocated by petitioners to the land of the Lincoln Street property. Consequently, *535 on this issue respondent's determination must prevail. Issue 3. Vacation Expenses
Respondent contests certain deductions, claimed by petitioners on their tax returns for 1977 and 1978 and arising out of trips taken by petitioners to Reno, Nevada; Phoenix, Arizona; and Palm Springs, California. Respondent does not dispute that petitioners spent a portion of each trip investigating investment properties. We understand petitioners' position to be that they were in the trade or business of owning rental properties, and that they are therefore entitled under section 162(a)(2) to deduct expenses incurred on trips during which they spent some time pursuing their trade or business by investigating investment and rental properties. The determination of whether a taxpayer is in a trade or business must be made on a case-by-case basis, taking into account all the facts and circumstances. Higgins v. Commissioner,312 U.S. 212 (1941); O'Donnell v. Commissioner,62 T.C. 781 (1974). Petitioners owned 21 rental units in the Santa Maria area during the tax years here in question. Additionally, they made an offer to purchase property in Reno, Nevada, *536 in 1977, and in 1979 they purchased two lots in Palm Springs which they had investigated in 1978. On these facts, we find that petitioners were in the trade or business of owning rental properties. Cf. Curphey v. Commissioner,73 T.C. 766, 774-775 (1980). Unfortunately for petitioners, the regulations interpreting section 162(a) provide that travel expenses incurred on a trip that mixes business and pleasure are deductible only if the trip is related primarily to the taxpayer's trade or business. [6] These regulations have been recognized as within the scope of the Secretary's rule-making authority. Rudolph v. United States,370 U.S. 269 (1962). *537 Kenneth testified that the November 1977 trip to Reno, Nevada, where two of the seven days there were spent on business matters, was primarily a vacation trip. There is no direct evidence in the record on the nature of the November 1978 trip to Phoenix, but the parties stipulated that only one of the eight days petitioners were in Phoenix was devoted to looking at investment property. In the absence of any evidence to the contrary, we find that the trip to Phoenix was intended by petitioners primarily as a vacation. Since the trips to Reno, Nevada, and Phoenix, Arizona, were primarily vacations, travel expenses incurred by petitioners on those trips are not deductible. Any nontravel expenses properly allocable to petitioners' trade or business incurred by petitioners on the trips to Reno and Phoenix are deductible, however. Sec. 1.162-2(b)(1), Income Tax Regs.
The parties stipulated that petitioners spent one day in May 1977, investigating investment real estate in Palm Springs, California. There is no hint that petitioners did anyting else on that trip or that it lasted longer than the one day. We find, therefore, that this trip did not mix business and pleasure in the *538 manner proscribed by the above regulation and petitioners are therefore entitled to deduct all expenses incurred on this trip. The record does not disclose what portion of petitioners' expenses associated with the above trips constituted transportation and what portion constituted meals, lodging, and other expenses "properly allocable to the taxpayer's trade or business." The parties merely stipulated that the total expenses for the trips in 1977 and 1978 were $ 623 and $ 602, respectively. Consequently, in our best judgment, we think it reasonable to allow petitioners to deduct 20 percent of their trip expenses in 1977 and 10 percent of the expenses incurred in 1978 as ordinary and necessary expenses of their trade or business. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). [7]
In May 1978, petitioners returned to Palm Springs and spent three days investigating investment real estate. In *539 1979, petitioners purchased two lots that they had investigated on this 1978 trip. At trial the parties agreed that expenses incurred by petitioners in investigating these properties constitute a capital expense to be added to their bases in these properties. Woodward v. Commissioner,397 U.S. 572 (1970); Hilton Hotels Corp.,397 U.S. 580 (1970). Consequently, we need not further consider the 1978 trip to Palm Springs. Decision will be entered under Rule 155.
Footnotes
1. By an amendment to his answer, respondent asserted increased interest income of $ 892 for 1978, increasing the asserted deficiency for that year to $ 2,222. Petitioners have stipulated that this adjustment is correct.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue. Section 162 provides in pertinent part: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *↩
3. See also Coombs v. Commissioner,608 F.2d 1269, 1276 n. 3 (9th Cir. 1979); affg. in part and revg. in part 67 T.C. 426↩ (1976).
4. Conte v. Commissioner,T.C. Memo. 1981-571↩.
5. The Court of Appeals for the Ninth Circuit, to which an appeal from this case would lie, looks to whether a taxpayer expected the employment at issue to last a long period of time. Harvey v. Commissioner,283 F.2d 491, 495 (9th Cir. 1960), revg. 32 T.C. 1368↩ (1959). Because the petitioner in the instant case did maintain such an expectation it would have been reasonable for him to have moved his permanent place of abode to the area around Diablo. Under either test petitioner was not "away from home" while employed at Diablo, and respondent's determination on this issue must prevail.
6. Sec. 1.162-2. Traveling expenses. (b)(1) If a taxpayer travels to a destination and while at such destination engages in both business and personal activities, traveling expenses to and from such destination are deductible only if the trip is related primarily to the taxpayer's trade or business. If the trip is primarily personal in nature, the traveling expenses to and from the destination are not deductible even though the taxpayer engages in business activities while at such destination. However, expenses while at the destination which are properly allocable to the taxpayer's trade or business are deductible even though the traveling expenses to and from the destination are not deductible.↩
7. The respondent has not raised the issue of substantiation of petitioners' expenses, consequently section 274(d) is not an issue and it presents no obstacle to the application of the principles of Cohan v. Commissioner,39 F.2d 540↩ (2d Cir. 1930).