**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 22, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ASH GROVE CEMENT COMPANY,
and its subsidiaries as a consolidated
group,

      Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

      Defendant - Appellee.

No. 13-3058
(D.C. No. 2:11-CV-02546-CM)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **HARTZ**, and **GORSUCH**, Circuit Judges.

---

The Internal Revenue Service ("IRS") denied a tax refund claim for $7,370,308 to

Ash Grove Cement Company and its subsidiaries, as a consolidated group, in 2010. Ash

Grove sued, seeking a district court order granting the refund. The district court granted

summary judgment to the United States. Exercising jurisdiction pursuant to 28 U.S.C.

§ 1291, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 32.1.

Many of the facts are stipulated. Ash Grove Cement Company ("Ash Grove")

manufactures and sells cement. Before December 31, 2000, Vinton Corporation

("Vinton") owned approximately two-thirds of the outstanding Ash Grove stock. Vinton

also owned the Lyman-Richey Corporation, a ready-mix cement company. In turn,

Vinton was wholly owned by or for the benefit of the Sunderland family. The rest of the

outstanding stock in Ash Grove was owned by members of the Sunderland family (about

six percent), the company's employee stock ownership plan (less than two percent), and

approximately 150 other shareholders unrelated to the Sunderlands.

Under the terms of a reorganization plan, Ash Grove acquired Vinton and Lyman-

Richey, and the Sunderland family received Ash Grove stock in return. In order to

execute the plan and negotiate the proposed transaction, Ash Grove's board of directors

created a special committee comprised of the two members of the board who were neither

members of the Sunderland family nor employees of Ash Grove. On November 2, 2000,

that committee approved the reorganization, with an exchange rate of 876 shares in Ash

Grove for each share in Vinton. As a result of the transaction, which was completed on

December 31, 2000, Ash Grove owned the Lyman-Richey Corporation and the

Sunderland family members who had owned stock in Vinton became directs owners of

stock in Ash Grove.

On January 18, 2002, Daniel Raider, a minority shareholder in Ash Grove, filed a

class action complaint in Delaware Chancery Court against Ash Grove and each member

of its board of directors. Raider alleged that the reorganization constituted self-dealing by the Sunderlands and that the special committee of the board was not meaningfully independent of the family. He claimed that the transaction had unfairly diluted the minority shareholders' interests in Ash Grove. Among other remedies, Raider sought rescission of the transaction, imposition of a constructive trust on all of the "profits and benefits" the individual defendants had "wrongfully obtained," and compensation from the individual defendants to Raider and the class "for all losses they have sustained as a result of the [t]ransaction."

In August 2005, the suit was settled without the admission of liability by any defendant. As part of the settlement, Ash Grove paid $15 million into a trust for the class. During the 2005 tax year, Ash Grove also paid $43,345 for legal fees incurred in defense of its board members and related to the suit. Ash Grove had previously adopted corporate bylaws that included indemnification rights for directors of the company. The bylaws stated in relevant part that "the Corporation shall indemnify and advance expenses to each person who is or was a director or officer of the Corporation . . . to the full extent permitted by the laws of the State of Delaware."

Ash Grove, together with several subsidiary corporations (collectively, the "Group" or "Plaintiffs"), filed a consolidated federal income tax return. The Group, in its 2005 tax return, deducted the settlement payment and the payment of $43,345 in legal fees as ordinary and necessary business expenses. The IRS disallowed the deductions on the ground that the payments should be considered capital expenditures. Ash Grove paid

the deficiency determined by the IRS, and after the IRS denied the Group's subsequent claim, the Group filed suit in district court.[1] The district court granted summary judgment to the United States and denied as moot the government's motion to exclude expert testimony by William B. Chandler, III, the former Chancellor of the Delaware Court of Chancery who had presided over the litigation between Raider and Ash Grove. Plaintiffs filed a timely notice of appeal.

## II

Plaintiffs contend that the district court erred by granting summary judgment for the United States. "We review the district court's summary judgment order de novo, and apply the same legal standards as the district court." Ribeau v. Katt, 681 F.3d 1190, 1194 (10th Cir. 2012) (quotation omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Ribeau, 681 F.3d at 1194.

Taxpayers may deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." I.R.C. § 162. However,

---

[1] The complaint filed by the Group included another claim regarding a "Research Credit Refund," but Plaintiffs stated that if Ash Grove received the refund that the IRS had determined should be allowed, it would not further contest the issue. It appears that Ash Grove was issued the relevant refund in December 2011, and that claim is not before us.

"[w]hile business expenses are currently deductible, a capital expenditure usually is amortized and depreciated over the life of the relevant asset, or, where no specific asset or useful life can be ascertained, is deducted upon dissolution of the enterprise." INDOPCO, Inc. v. C.I.R., 503 U.S. 79, 83-84 (1992); see I.R.C. § 263. "It has long been recognized, as a general matter, that costs incurred in the acquisition or disposition of a capital asset are to be treated as capital expenditures." Woodward v. C.I.R., 397 U.S. 572, 575 (1970); see also INDOPCO, Inc., 503 U.S. at 89 ("[c]ourts long have recognized that expenses . . . incurred for the purpose of changing the corporate structure for the benefit of future operations are not ordinary and necessary business expenses" and "[d]eductions for professional expenses thus have been disallowed in a wide variety of cases concerning changes in corporate structure" (quotation omitted)). Moreover, "the expenses of litigation that arise out of the acquisition of a capital asset are capital expenses, quite apart from whether the taxpayer's purpose in incurring them is the defense or perfection of title to property." United States v. Hilton Hotels Corp., 397 U.S. 580, 583 (1970). "The law could hardly be otherwise, for such ancillary expenses incurred in acquiring or disposing of an asset are as much part of the cost of that asset as is the price paid for it." Woodward, 397 U.S. at 576.

Whether litigation expenses "are properly characterized as 'ordinary income' or 'capital income' is governed by the 'origin of the claim' test." Dye v. United States, 121 F.3d 1399, 1404 (10th Cir. 1997). "[T]he object of the 'origin of the claim' test is to find the transaction or activity from which the taxable event proximately resulted, or the event

-5-

that led to the tax dispute." Id. (quotations and citation omitted).

It is a "familiar rule that an income tax deduction is a matter of legislative grace and . . . the burden of clearly showing the right to the claimed deduction is on the taxpayer." INDOPCO, Inc., 503 U.S. at 84 (quotations omitted). Courts have repeatedly concluded that litigation costs arising out of corporate reorganizations are capital expenditures. E.g., id. at 90; Hilton Hotels Corp., 397 U.S. at 583-84. Ash Grove attempts to distinguish those cases by arguing that: (1) the Raider litigation did not involve the purchase of a capital asset or setting the price of a capital asset and (2) "Ash Grove was not the real party in interest in" Raider's suit.

Raider's complaint, however, expressly concerned the terms of the reorganization, particularly the purchase price for Vinton and the Lyman-Richey Corporation. The complaint sought, among other remedies, rescission of the transaction. Thus, the legal fees and settlement operated to defend and maintain the reorganization itself. The Supreme Court has previously determined that a variation in state law that changed the relationship between parties involved in a suit regarding capital expenses did not alter the deductibility of expenditures. See Hilton Hotels Corp., 397 U.S. at 583-84. In Hilton Hotels Corp., "[t]he chief distinction" was "that under New York law title to the dissenters' stock passed to [a company] as soon as they formally registered their dissent, placing them in the relationship of creditors of the company for the fair value of the stock, whereas under Iowa law passage of title was delayed until after the price was settled in the appraisal proceeding." Id. at 583 (footnote omitted). The present matter

-6-

also involves "a distinction without a difference." Id. at 584. As in Woodward, where the plaintiffs were akin to "creditors of the company for the fair value of the stock," Hilton Hotels Corp., 397 U.S. at 583, the Raider complaint sought payment and rescission to ensure that minority shareholders retained the fair value of their stock in the reorganization. The fact that Delaware law allows a suit against the board of directors to seek those remedies does not change the fact that the suit, and Ash Grove's related payments, "proximately resulted" from the transaction itself. Dye, 121 F.3d at 1404 (quotation omitted). We thus agree with the government and the district court that the expenditures were capital expenses.[2]

Ash Grove also contends that it was a named defendant in the Raider litigation only "to invoke the Court of Chancery's jurisdiction over Ash Grove for the purposes of any rescission remedy that might be ordered by that court." Plaintiffs state that Raider did not assert a claim for which relief could have been granted by the Delaware courts—and did not plead a cause of action—against Ash Grove, and thus the payments regarding the litigation were purely pursuant to the indemnification requirements set out in Ash

---

[2] Plaintiffs argue that a different conclusion is mandated by Larchfield Corp. v. United States, 373 F.2d 159 (2d Cir. 1966), and other cases that were decided prior to the Supreme Court's articulation of the "origin of the claim" test in Woodward. In Larchfield, the Second Circuit concluded that amounts paid for counsel for individual defendants pursuant to an indemnification bylaw were deductible even though the same payments would not have been deductible if incurred by the corporation itself. 373 F.3d at 167. Larchfield, however, noted that "the expenses of a suit against directors" are not "always deductible." Id. at 166. We apply the "origin of the claim" test and not the Larchfield test, and are convinced that the present matter is one of those instances in which the expenses related to such a suit are not deductible.

Grove's bylaws. Although Ash Grove contends it "would have been dismissed upon motion by the time of the settlement," it was not dismissed in the period—more than two years—between the complaint and the settlement. Plaintiffs assert that Chandler's expert report "implie[s]" that they would have been dismissed, but it does no such thing. Rather, Chandler states that Ash Grove was an "indispensable party" to the litigation, that its "rights would have been affected if the Court granted the Raider Plaintiffs certain relief," and that Ash Grove would have "no longer been indispens[a]ble to the action" only "[i]f, hypothetically, the Raider Litigation had progressed to a point at which the Court were able to determine that the remedy of rescission was not available to the Raider Plaintiffs." (Emphasis added.) Even were we to assume that the outcome of the origin of the claim test would be different had Ash Grove not been a party to the case and not had real motivations to seek a settlement for its own benefit, Plaintiffs have not carried their burden in demonstrating their right to a deduction premised on such a factual scenario. See INDOPCO, Inc., 503 U.S. at 84.

Moreover, we are unconvinced that the extent of Ash Grove's indispensability in the Delaware litigation is relevant to our analysis. In Hilton Hotels Corp., the company "obtained the services of lawyers, and other professional services, in connection with the appraisal litigation." 397 U.S. at 583 (emphasis added). Similarly, there can be no dispute in the case at bar that the payments made by Ash Grove were, at a minimum, "in connection with" Raider's suit and the reorganization. We do not need to interpret state law regarding proper joinder of parties to determine the nature of the connection between

-8-

the payment settling the Raider litigation and the reorganization.  Thus, we conclude that the district court was correct in granting summary judgment to the government based on its determination that the payment made by Ash Grove was a nondeductible capital expense.

## III

**AFFIRMED**.


Entered for the Court


Carlos F. Lucero
Circuit Judge