GERLI & CO., INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4868–72.    Filed March 5, 1980.

*Hans A. Nathan, James K. Alford,* and *Thomas M. Ingoldsby,* for the petitioner.

*John C. Calhoun, James E. Connor,* and *Joseph L. Cannella,* for the respondent.

STERRETT, *Judge:* By letter dated March 28, 1972, respondent determined a deficiency in income taxes due from petitioner Gerli & Co., Inc. (Gerli), and its subsidiaries, for their taxable year ended December 31, 1965, in the amount of $346,448.50. Gerli and its subsidiaries[1] had filed as a consolidated group for that taxable year. Gerli is, therefore, for purposes of this case, the sole agent for the consolidated group and is authorized to act in its own name in all matters relating to the consolidated

---

[1] The subsidiary companies of petitioner are: Cheney Bros., Southern, Inc.; Cheney Bros., Inc.; Pemco Corp.; C. & V. Fabrics, Inc.

group's tax liability for the taxable year before us. See sec. 1.1502–77(a), Income Tax Regs. The primary issue for our decision herein is whether petitioner is entitled to the benefits of a favorable ruling under section 367 with respect to the liquidation of a foreign subsidiary, which liquidation otherwise qualifies for treatment under section 332. Subsidiary issues before us deal with petitioner's liability for a section 6653(a) addition to tax and the capital or currently deductible nature of certain legal expenses.[2]

## FINDINGS OF FACT

Some of the facts were stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Gerli is a Delaware corporation which at all times relevant hereto had its principal offices in New York, N.Y. The return herein was timely filed on the accrual basis with the District Director of the District of Manhattan, New York, N.Y.

Petitioner is merely the last of a series of corporate predecessors stretching back to 1922. Petitioner's first predecessor was La France Art Co., incorporated in 1922. La France Art Co. became La France Textile Industries in 1924. In 1929, La France Textile Industries changed its name to La France Industries, Inc. (hereinafter referred to from time to time as LFI–US). In 1959, La France Industries, Inc., changed its name to LFI Corp. In 1960, LFI Corp. changed its name to Gerli & Co., Inc.

La France Plushes, Inc. (Plushes), was incorporated as a foreign subsidiary of La France Textile Industries in the province of Ontario, Canada, in 1927. LFI–US or its corporate predecessor owned over 99 percent of the authorized and outstanding shares of Plushes throughout Plushes' existence. On January 31, 1933, La France Textiles Ltd. (LFT) was incorporated as a Dominion corporation in Canada. LFT was capitalized with but one class of common voting stock.

In 1933, a plan of reorganization was adopted for the purpose of transferring Plushes' assets and liabilities to LFT. On June 10, 1933, the shareholders of Plushes exchanged 2,943 shares of

---

[2]Petitioner has conceded respondent's disallowance of a claimed deduction of $1,080 for "general and miscellaneous expenses," and has not challenged respondent's allowance of an additional $2,443.92 as a depreciation deduction.

common stock and 27 shares of preferred stock in Plushes for 2,970 shares of common stock in LFT. Thereafter, and at all times relevant hereto, LFI-US or its corporate successors owned over 99 percent of the authorized, issued and outstanding shares of LFT. On September 23, 1933, LFT acquired, for $1, all of the assets and liabilities of Plushes. Plushes surrendered its corporate charter in 1934.

Neither petitioner nor any of its corporate predecessors requested, nor did they receive, a ruling from the Commissioner pursuant to the predecessor of section 367, I.R.C. 1954, with respect to any of the transactions involved in the reorganization of Plushes.

LFT engaged in the textile business in Canada as a wholly owned subsidiary of LFI-US until 1959. On August 31, 1959, after incurring substantial losses for several taxable years, LFT sold its plants, equipment, and inventories and curtailed its business activities. After several more years of unsuccessfully searching for an appropriate business into which LFT could be launched, Gerli concluded that LFT should be liquidated.

On October 26, 1964, Gerli filed with the rulings section of the reorganization branch of respondent's national office a request for a section 367 ruling that, in the event LFT were liquidated, LFT would be recognized as a corporation for purposes of section 367 and section 332 and that, therefore, no gain or loss would result to Gerli from the liquidation. This ruling request revealed that as of August 31, 1964, after LFT had succeeded in discounting the notes receivable it obtained from the sale of its operating assets, LFT had the following assets and liabilities:

| | |
|---|---:|
| Current assets | $1,756,684.27 |
| Current liabilities | 52,068.35 |
| Capital stock (4,007 shares of $100 par value) | 400,700.00 |
| Surplus | 1,355,590.62 |
| Liabilities and capital | $1,756,684.27 |

After having filed this ruling request, petitioner, through its counsel, engaged in discussions with representatives of the Commissioner with respect to the Commissioner's requirements for issuing a favorable section 367 ruling concerning the

---

[3]This table represents verbatim a joint exhibit of the parties.

complete liquidation of LFT. During these discussions, respondent informed petitioner several times that a favorable section 367 ruling would not be issued unless petitioner agreed to include LFT's current and accumulated earnings and profits in income as a dividend during the year of liquidation.

On December 2, 1964, as a result of these communications from respondent, petitioner filed a document entitled "Addendum to Request for Section 367 Ruling by Gerli & Co., Inc., 2 Park Avenue, New York, N.Y." This addendum was in the form of a letter from Francis M. Gerli, president of Gerli, to petitioner's attorneys. This letter provided in relevant part as follows:

Under date of October 26, 1964, you filed, on our behalf, a request for a section 367 ruling predicated upon the liquidation by our corporation of our wholly owned Canadian subsidiary, LFT, Ltd. This request for ruling was verified by the undersigned as President of Gerli & Co., Inc.

We understand that this letter will be attached by you and incorporated by reference in an addendum to the original request for ruling, which you will file in the near future. We further understand that the commitment made in this letter, which is recited hereinafter, will constitute an agreement between our company and the Commissioner.

Fully bearing the foregoing understanding in mind, Gerli & Co., Inc., agrees that in the event it proceeds with the liquidation of LFT, Ltd., pursuant to a ruling by the Commissioner issued on the basis of the solicitation of October 26, 1964, current and accumulated earnings of LFT, Ltd., at the time of liquidation will be treated by Gerli & Co., Inc., as dividend income in the year of LFT, Ltd., liquidation, subject to applicable foreign tax credits.

A copy of this "addendum" was transmitted by petitioner's attorneys to respondent, along with certain other documents requested by respondent with respect to the ruling, under cover of letter dated December 2, 1964. In this letter, the addendum was described as:

A commitment of Gerli & Co., Inc., by and through the president of the corporation, agreeing that if the Canadian subsidiary, LFT, Ltd., is liquidated pursuant to its request for ruling of October 26, 1964, current and accumulated earnings of the subsidiary at the time of liquidation will be treated by Gerli & Co., Inc., as dividend income in that year, subject to the foreign tax credits applicable against such dividend income.

Following petitioner's representations to respondent, respondent issued a letter ruling on January 15, 1965, to petitioner which provided as follows:

This is in reply to the letter dated October 26, 1964, from Mr. Bert B. Rand,

in which a ruling is requested that the proposed transaction described below is not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income taxes within the meaning of section 367 of the Internal Revenue Code. Additional information was submitted in a letter dated December 2, 1964. The relevant facts submitted for consideration are as set forth below.

\* \* \* \* \* \* \*

It is stated that the current and accumulated earnings of L.F.T. at the time of its liquidation will be treated as dividend income by Geril in the the year of L.F.T.'s liquidation, subject to any available foreign tax credits on such income.

Based solely upon the information submitted, and upon the foregoing representations, it is held as follows:

(1) The proposed complete liquidation of L.F.T. is not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income taxes within the meaning of section 367 of the Code.

(2) In accordance with section 332(a), no gain or loss will be recognized to Gerli upon the receipt of L.F.T.'s assets provided all of the requirements of section 332(b) are met.

(3) The basis of L.F.T.'s assets received by Gerli will be the same as the basis of such assets in the hands of L.F.T. immediately prior to the transfer (section 334(b)(1)).

It is important that a copy of this letter be attached to the Federal income tax return of Gerli for the taxable year in which the transaction is consummated.

LFT was subsequently liquidated in 1965. While petitioner liquidated LFT pursuant to the provisions of section 332, it did not include in its income any amount attributable to LFT's current or accumulated earnings and profits. Included as page 7 of petitioner's 1965 Federal income tax return was a page entitled "Statements in Lieu of Form 2950[,] 2952 and 3646." One of the statements made on this page was the following: "Approval for a tax-free liquidation of LFT, LTD. was received from the Treasury Department, Washington, D.C. on January 15, 1965."[4] A copy of respondent's section 367 letter was not attached to petitioner's 1965 income tax return.

Upon the liquidation of LFT in 1965, petitioner received cash and assets having a total value net of liabilities of $1,780,296.43. Petitioner's basis in its LFT stock in 1965 at the time of LFT's liquidation was $400,700.

Petitioner paid legal fees and expenses in 1965 of $9,583 to the law firm of Trammell, Rand & Nathan (Trammell) with respect

---

[4] A similar statement was included on p. 13 of petitioner's 1965 income tax return.

to the liquidation of LFT. Trammell had been employed in the summer of 1964 by Gerli's tax accountants to prepare an information return for Gerli. Thereafter, Trammell had assisted in the liquidation of LFT as special counsel. Trammell obtained the section 367 ruling here at issue. After obtaining the ruling, Trammell had no further dealings with Gerli except to notify Gerli's Canadian associates of certain relevant matters. Trammell did not participate in the preparation of Gerli's consolidated income tax return for 1965.

The petition herein was filed on June 22, 1972. Respondent's answer thereto was filed on July 31, 1972. On June 10, 1977, petitioner filed a motion for leave to file an amended petition and an amended petition. This motion was granted on June 15, 1977. By its amended petition, petitioner conceded the correctness of respondent's adjustments for general and miscellaneous expenses, that this action was not barred by the statute of limitations, as well as certain other additional items. Respondent filed his answer to petition as amended on August 15, 1977. By this amended answer, respondent first claimed an addition to tax under section 6653(a), in the amount of $17,326.40, for petitioner's alleged intentional disregard of rules and regulations resulting in the deficiency claimed. At the trial herein, respondent conceded that he has the burden to prove the applicability of section 6653(a) to petitioner.

## OPINION

The primary issue for our decision herein is the effect of petitioner's failure to include LFT's current and accumulated earnings and profits in income as a dividend in the year LFT was liquidated. Respondent argues that, as petitioner failed to abide by the express requirements of his section 367 ruling, petitioner is no longer entitled to claim the benefits of that ruling. Of course, if petitioner has no valid section 367 ruling, it is not entitled to claim the benefits of section 367, and LFT cannot be considered a corporation for purposes of section 332. Section 331 would then apply, and petitioner would be required to recognize as long-term capital gain (subject to the requirements of sec. 1248) the entire difference between the value of the money and property it received on its liquidation of LFT and the adjusted basis of its stock in LFT. In the alternative, respondent argues that, if the protection of his section 367 ruling is still available to

petitioner, petitioner must comply with its terms and take into income as a dividend LFT's entire earnings and profits account, both accumulated and current, as of the liquidation date.

Petitioner argues simply that the condition of respondent's ruling requiring that it include LFT's earnings and profits in income was an illegal condition separable from the rest of respondent's ruling. Petitioner argues that it was not obligated to comply with this illegal condition, which it likens to a "fee" demanded by respondent to issue a favorable ruling, although it may still rely upon that portion of respondent's ruling which finds that petitioner's liquidation of LFT was "not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income taxes" within the meaning of section 367. Thus, petitioner concludes that it is entitled to the nonrecognition provisions of section 332 on its liquidation of LFT. In essence, petitioner's argument is that respondent's authority under section 367 extends only so far as determining whether one of the principle purposes of the transaction, as presented, is the avoidance of tax and that respondent cannot pose conditions, such as the one before us, to his favorable rulings. In the alternative, petitioner argues that if respondent was correct in demanding that petitioner include LFT's earnings and profits in income in the year of liquidation, only such earnings and profits as were earned after 1963 should be included in its income, i.e., nothing.[5]

As it stood in 1965, section 367 provided in relevant part as follows:

SEC. 367. FOREIGN CORPORATIONS.

In determining the extent to which gain shall be recognized in the case of any of the exchanges described in section 332 * * * a foreign corporation shall not be considered as a corporation unless,. before such exchange, it has been established to the satisfaction of the Secretary or his delegate that such

---

[5]The following language is taken from petitioner's main brief:

"Under the explicit language of I.R.C. sec. 367 the Secretary is authorized only to determine the purposes of a plan of liquidation and if one of the principal purposes of the plan is not the avoidance of federal income taxes, I.R.C. sec. 367 requires that without any further conditions the Secretary so rule. * * * His attempt to exact a toll charge merely as an added cost of liquidating of LFT-Canada does not have even the color of statutory approbation. To the extent a toll charge is not necessary to prevent the avoidance of federal taxes, it is illegal. Any appendage to the ruling letter requiring payment of such a toll charge is unenforceable and Petitioner is in full compliance with the ruling if the liquidation of LFT-Canada was not for the purpose of avoiding federal taxes."

exchange is not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income taxes. * * *

Originally enacted as section 112(k) of the Revenue Act of 1932, Pub. L. 72–154, 47 Stat. 169, section 367 was designed to obviate certain methods of tax avoidance involving the use of foreign corporations:

To prevent * * * [tax] avoidance * * * [sec. 112(k)] withdraws the transaction from the operation of the nonrecognition sections where a foreign corporation is a party to the transaction, unless prior to the exchange the Commissioner is satisfied that the transaction is not in pursuance of a plan having as one of its principal purposes the avoidance of taxes. It will be noted that under this provision a taxpayer acting in good faith can ascertain prior to the transaction, by submitting his plan to the Commissioner, that it will not be taxable if carried out in accordance with the plan. *Of course, if the reorganization or the transfer is not carried out in accordance with the plan submitted the Commissioner's approval will not render the transaction tax-free.* [S. Rept. 665, 72d Cong., 1st Sess. (1932), 1939–1 C.B. (Part 2) 496, 515. Emphasis added.]

Thus, at all times relevant hereto, section 367 imparted a great deal of authority and responsibility to the Commissioner to protect the Federal fisc against tax-avoidance schemes involving foreign corporations. This almost plenary power reposed in the Commissioner was subject to no fixed procedures for judicial review until the enactment, as part of the Tax Reform Act of 1976, of section 7477, added by sec. 1042(d)(1), Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1637. See also *Dittler Bros., Inc. v. Commissioner*, 72 T.C. 896 (1979).

In our view, the case put to us by the parties is simple: Petitioner wished section 332 treatment for its liquidation of LFT. It made application, therefore, to the respondent for a ruling under section 367 that such a liquidation would not have as one of its principal purposes the avoidance of Federal income taxes. Respondent agreed to issue such a determination, but only on the express condition that, before he would be satisfied that the proposed liquidation did not have the prohibited purpose, petitioner agree to include LFT's current and accumulated earnings and profits in income as a dividend in the year of liquidation. Informed that no favorable ruling would be forthcoming unless it agreed to this condition, petitioner expressly agreed to make the required income inclusion—and then did not.

The regulations under section 367, as they stood in 1965, echoed the original Finance Committee report, quoted above, saying:

Sec. 1.367–1. Foreign corporations.— * * * If the transaction is not carried out in accordance with the plan submitted, the Commissioner's approval will not render the transaction tax-free.

The intendment of this statement is clear: A taxpayer who obtains a favorable ruling based upon a certain set of representations cannot rely upon that favorable ruling if its representations are later shown to be false. As we see it, the question for our decision is simply this: Was the transaction carried out in accordance with the plan transmitted to the Commissioner? Clearly it was not.

Simply put, petitioner would have us bifurcate respondent's ruling into two freestanding conclusions: (1) The proposed liquidation did not have as one of its principal purposes the avoidance of tax, and (2) the requirement that the U.S. parent include in its income the undistributed current and accumulated earnings and profits of the foreign subsidiary. We are "underwhelmed" by the argument. We accept respondent's position that petitioner could not have one without the other.

At all times relevant hereto, section 367 required the satisfaction of the Secretary that the proposed transaction was not one which had as one of its principal purposes the avoidance of income tax. Prior to the enactment of section 7477, "there * * * [was] no effective way a taxpayer [could] * * * appeal an adverse decision by the Commissioner to the courts because the statute require[d] the Commissioner's, not the court's, satisfaction." S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 57, 299. The condition to which petitioner objects has long been a consistently applied precondition set by respondent to his issuance of a favorable section 367 ruling.

We noted the existence of this practice, for example, in our case *H. H. Robertson Co. v. Commissioner*, 59 T.C. 53, 68 (1972), affd. without published opinion 500 F.2d 1399 (3d Cir. 1974), which also involved the year 1965. Further, this standard for the issuance of a favorable section 367 ruling has been implicitly approved by Congress in the enactment of section 1248[6] and in connection with the enactment of section 7477.[7] Clearly, it would be anomalous to hold, as we must, that respondent had a clear right and duty to be satisfied that the proscribed purpose did not

[6]See also H. Rept. 1447, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 405, 480–481; H. Rept. 2508, 87th Cong., 2d Sess. (1962), 1962–3 C.B. 1129, 1163.

[7]S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 57, 299–302.

exist, and at the same time limit, after the fact, this statutorily imposed right and duty by severing off and voiding a condition precedent which respondent had set to his satisfaction. A holding by this Court that respondent could not condition his issuance of a section 367 ruling on agreements such as that before us, or that this condition was severable and void, would eviscerate respondent's right to be satisfied that a particular transaction does not have the proscribed purpose.

Even if we were to go so far as to limit respondent's authority under section 367 to the right to require only, for example, "reasonable conditions," we would have no hesitation in finding that standard met here. Clearly, where a foreign corporation liquidates with undistributed earnings and profits, U.S. income tax has been avoided to the extent of the difference between the tax on the liquidation at capital gains rates and the tax on the amount of earnings and profits taxed at "ordinary" rates. The fact that this benefit is allowed domestic corporations does not require that the respondent also allow this benefit to foreign subsidiaries of U.S. persons.

We need not determine whether, under any circumstances, this Court can pass judgment with respect to the reasonableness of the conditions posed by the respondent for a favorable section 367 ruling for all taxable years prior to the effective date of section 7477. We do note that the statute requires the Commissioner's satisfaction, not our own. Here, we conclude, without hesitation, that the respondent's condition was appropriate and reasonable, and we approve it.

To us, it follows that as petitioner decided to structure the liquidation of LFT in such a way as to fall outside the ruling at issue, it forfeited its right to rely on that ruling. Gerli cannot, therefore, now be heard to claim that it has "before such exchange * * * established to the satisfaction of the Secretary or his delegate" that the liquidation exchange before us is "not [an exchange] in pursuance of a plan having as one of its principal purposes the avoidance of Federal income taxes." Consequently, petitioner has failed to meet the requirement of section 367 and, therefore, LFT cannot be considered a corporation for purposes of section 332. As that section does not apply,

the exchange before us must be held to be one described in section 331.[8]

Section 331(a)(1) provides that "Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock." Section 331(a)(1) requires, therefore, that the liquidation of LFT be treated as an exchange of property for stock. But if no favorable ruling under section 367 has been obtained, and 331 therefore applies to a transaction, the transaction is also one described in section 1248.

Section 1248 provides that, if a U.S. person, as defined, sells or exchanges stock in a foreign corporation, or if a U.S. person receives a distribution from a foreign corporation, which is treated as an exchange under section 331, and if certain other requirements are met,[9] then the gain, if any, recognized on the sale or exchange of such stock shall be included in the gross income of such person as a dividend to the extent of the earnings and profits of the foreign corporation attributable to such stock which were accumulated in taxable years of such foreign corporation beginning after December 31, 1962, and during the period or periods the stock sold or exchanged was held by such person while such foreign corporation was a controlled foreign corporation.

As section 1248 clearly applies to the liquidation at hand, the next question we must face relates to the amount of earnings and profits cognizable under section 1248 includable in petitioner's income as a dividend. In this connection, we note that the parties stipulated that "If the period for computing the [sec. 367] 'toll charge' begins in 1963, there is not tax resulting from the 'toll charge.' " In other words, the parties have stipulated that LFT had zero earnings and profits after 1962 for general section 367 purposes. Unfortunately, the parties have failed to stipulate whether or not post–1962 earnings and profits for section 367 "toll charge" purposes is the same as earnings and profits for

---

[8]Referring again to the 1932 Senate Finance Committee report, we are told that "For all other purposes [i.e., for purposes of all those sections other than those described in sec. 367], including the nonrecognition of loss in any transaction described in the foregoing subsections, the tax status of a foreign corporation is not affected by the new subsection." S. Rept. 665, 72d Cong., 1st Sess. (1932), 1939–1 C.B. (Part 2) 496, 515.

[9]The other requirements that need to be met are described in sec. 1248(a)(2). They are that the U.S. person own, or be considered as owning, 10 percent or more of the total combined voting power of all classes of stock, within the meaning of sec. 958, and that the foreign corporation be a "controlled foreign corporation" as defined in sec. 957. Both these additional requirements are met herein.

section 1248 purposes. There are clearly differences in the calculations required to arrive at these two amounts—although the two amounts might often be identical. Thus, we hold that petitioner realized long-term capital gain on the liquidation of LFT except to the extent that it was required to treat that portion of its gain as dividend income for section 1248 purposes.[10] The amount of dividend income appropriate must be determined under Rule 155, Tax Court Rules of Practice and Procedure.

Next, we address petitioner's claim for a deduction with respect to certain attorney's fees. At issue here is $9,583 paid in 1965 to the firm Trammell, Rand & Nathan (Trammell). Very little evidence was contained in the record with respect to this payment. We have found that Trammell was employed by Gerli's tax accountants in the summer of 1964 to prepare a Form 959 return for a controlled foreign corporation, presumably LFT. Thereafter, Trammell was asked to assist in the liquidation of LFT as Gerli's special counsel. The firm obtained the section 367 ruling herein at issue, permitting a section 332 liquidation, in January of 1965. The firm had nothing to do with Gerli thereafter except to notify Gerli's Canadian associates of relevant matters. The firm did not participate in the preparation of the consolidated group return here at issue.

The record with respect to the claim is weak. We have before us the bare claim for a deduction supported only by a stipulated narrative of an attorney who worked for Trammell at the relevant time, describing in general terms what he and his firm did for Gerli in 1964 and 1965.[11] No relevant evidence was included in the record with respect to the question of whether 1965 was the appropriate year in which to accrue the deduction of attorney's fees here at issue, assuming they are deductible, although the record clearly shows that the vast majority of the services for which the amount in issue must have been paid were performed in 1964. There is no record of exactly what work was performed or when. There is no itemized bill. There is no attempt to allocate the deduction between the various types of work it is claimed was done.

Respondent argues that no part of the amount in issue is

[10]As neither party raised the applicability of sec. 1248(g), we do not reach that subsection's applicability or inapplicability to the facts before us.

[11]The entire record on this claimed deduction consists of a joint exhibit entitled "Stipulated testimony of Bert B. Rand, Esquire."

currently deductible because petitioner has failed to carry its burden of proof that the amount involved, or any part of it, is not capital in nature. Petitioner's response to respondent's argument is to cite several cases[12] involving the deductibility to a liquidating, partially liquidating, or reorganizing corporation, of its liquidation expenses. Unfortunately, as Gerli neither liquidated, partially liquidated, or reorganized, these cases are inapposite.

In determining the character, as capital or ordinary, of a particular expenditure, the appropriate inquiry is the origin of the expense. See *Woodward v. Commissioner*, 397 U.S. 572, 577–579 (1970). See also *United States v. Gilmore*, 372 U.S. 39, 44–45 (1963); *Bankers Union Life Insurance Co. v. Commissioner*, 62 T.C. 661, 682 (1974). If the expense arises in connection with the acquisition of a capital asset, i.e., an asset having a useful life substantially in excess of the taxable year, the expense is capital. *Woodward v. Commissioner, supra* at 576–577; sec. 1.263(a)–2(a), Income Tax Regs.

The facts before us show that those of petitioner's expenditures allocable to obtaining the section 367 ruling at issue were an integral part of petitioner's acquisition of LFT's assets. On similar facts, we have held the expenses involved to be capital. In *Bankers Union Life Insurance Co. v. Commissioner, supra*, we relied on *Woodward v. Commissioner, supra*, and *United States v. Hilton Hotels Corp.*, 397 U.S. 580 (1970), to require a parent to capitalize the legal expenses it incurred in acquiring the assets of a subsidiary. In that case, the parent corporation had acquired the stock of a second corporation for the purpose of acquiring that corporation's assets. We held that the parent's legal expenses in liquidating its subsidiary were capital because " 'expenses * * * that arise out of the acquisition of a capital asset are capital expenses.' " *Bankers Union Life Insurance Co. v. Commissioner, supra* at 682, citing *United States v. Hilton Hotels Corp., supra* at 583. While we recognize that the case before us does not involve a section 332/334(b)(2) liquidation (as we presume *Bankers Union Life Insurance Co. v. Commissioner, supra*, did), we think the principles are the same. We hold that all those legal expenses properly allocable to the acquisition of

---

[12]*Gravois Planing Mill v. Commissioner*, 299 F.2d 199, 208 (8th Cir. 1962); *United States v. Transamerica Corp.*, 392 F.2d 522, 523 (9th Cir. 1968), affg. 254 F. Supp. 504, 512 (N.D. Cal. 1966); *E. I. duPont de Nemours & Co. v. United States*, 432 F.2d 1052, 1058–1059 (3d Cir. 1970).

the section 367 ruling and any other work Trammell did on behalf of Gerli with respect to Gerli's acquisition of LFT's assets are capital in nature.

Thus, at least a portion of the expenses in issue is clearly capital. But that portion of the expenses which is not capital cannot be determined from the record. It would appear that Trammell prepared a Form 959 for Gerli in 1964. Petitioner's expenses allocable to the preparation of a tax return are clearly currently deductible under section 162. But there is no evidence which would allow us to conclude that petitioner did not accrue and pay for this work, which was done in 1964, until 1965. Further, we have no basis upon which we could make even an intelligent guess with respect to the proper allocation between capital and ordinary items—even if we were to believe that such an allocation was warranted. We have no alternative, therefore, but to find that all of the expenses before us are capital. The amount in issue should, therefore, go to reduce petitioner's capital gain on the liquidation of LFT.

The final issue for our decision involves respondent's claim for a section 6653(a) negligence penalty. Initially, we need to consider petitioner's argument that respondent's claim was not properly before the Court. Petitioner's argument revolves around (1) its view that respondent was required to obtain the Court's permission under Rule 41, Tax Court Rules of Practice and Procedure, to file his amended answer, and (2) its claim that "None of the Commissioner's allegations are based on newly-discovered facts and they are not related in any way to the allegations in the amendments to the Petition. * * * Under these circumstances, the Commissioner could not, *sua sponte*, place the negligence penalty in issue in his Answer to the amendments to the Petition." Respondent, of course, replies that Rules 36(a), 37(a), and 41(a) provide him with an unqualified right to file an answer to petitioner's amended petition and to include therein his claim for the negligence penalty.

We believe that respondent's view is correct. Because the claim for the section 6653(a) addition to tax was asserted by respondent before the conclusion of the trial in this case, we have jurisdiction to redetermine such increased deficiency. Sec. 6214(a); *Jasionowski v. Commissioner*, 66 T.C. 312, 317 (1976). Even though we have jurisdiction, we need not allow respondent to amend his answer to claim the negligence penalty unless we

are of the opinion that such amendment is warranted by the facts of the case before us. *Commissioner v. Long's Estate*, 304 F.2d 136, 141–142 (9th Cir. 1962). We think respondent's amendment is warranted in this instance. See *Commissioner v. Erie Forge Co.*, 167 F.2d 71, 74, 76 (3d Cir. 1948), affg. a Memorandum Opinion of this Court.

We think that the question before us is governed by Rule 36, Tax Court Rules of Practice and Procedure. That Rule grants respondent 45 days within which to file an answer to an amended petition or an amendment to the petition. There is no limit, expressed or implied, to what respondent can include in such an answer to an amended petition. Indeed, Rule 36(b) requires only that the answer "contain a clear and concise statement of every ground, together with the facts in support thereof, on which the Commissioner relies and has the burden of proof." Certainly this requirement is met here.

Petitioner does not, nor could it, claim that it would be prejudiced in any way by our hearing respondent's section 6653(a) claim. See *Estate of Horvath v. Commissioner*, 59 T.C. 551, 555 (1973). Petitioner itself acknowledges that it has not been surprised by the allegation of any new facts. Further, we note that petitioner's objection to respondent's answer comes over 2 years after it was filed and that no timely objection thereto was made in reply to its filing. Certainly, if petitioner perceived some procedural problem with respondent's answer to its amended petition, and if petitioner felt prejudiced by respondent's claim for the section 6653(a) penalty, petitioner should have made its objections known in a more timely fashion. Just as the respondent must be diligent in the preparation of his case, so must petitioner.[13]

In sum, the only prejudice possible to petitioner at this point is to have the Court consider whether it was negligent or intentionally disregarded rules or regulations in reporting the transaction in issue. Respondent, on the other hand, would suffer great prejudice in that he would not be able to fully present his case, despite having given adequate warning of all his claims to petitioner. We conclude that respondent's section 6653(a) claim is validly before the Court.

---

[13] *Chanik v. Commissioner*, T.C. Memo. 1972–174, affd. 492 F.2d 1182 (6th Cir. 1974).

We now address, therefore, the substance of respondent's claim itself. We think the conclusion inescapable that petitioner's "intentional disregard of rules and regulations" is the source of the underpayment that we have found owing herein. Petitioner received a favorable ruling, purported to take advantage of the ruling's benefits, yet ignored the ruling's conditions. We believe that petitioner had a choice. It could follow the requirements of the ruling and thereby become entitled to the benefits provided by the ruling, or it could ignore the ruling and report the appropriate income. It intentionally and knowingly did neither. To find for petitioner in this case would be to condone actions which border on misrepresentation. We hold that respondent has carried his burden and that petitioner is liable for the addition to tax described in section 6653(a).

*Decision will be entered under Rule 155.*