**GERLI & CO., INC.,
Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 359, Docket 81–4121.

United States Court of Appeals, Second Circuit.

Argued Dec. 2, 1981.
Decided Jan. 15, 1982.

Gerald S. Rourke, Washington, D. C. (Joel R. Weinstein, Washington, D. C., Edward J. Ennis, New York City, of counsel), for petitioner-appellant.

David English Carmack, Atty., Tax Division, Dept. of Justice, Washington, D. C. (John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup, Robert T. Duffy, Donald B. Susswein, Attys., Tax Division, Dept. of Justice, Washington, D. C., of counsel), for respondent-appellee.

Before FEINBERG, Chief Judge, OAKES, Circuit Judge, and CONNER,* District Judge.

---

* Honorable William C. Conner of the United States District Court for the Southern District of New York, sitting by designation.

1. LFT was the final form of a corporation which underwent a number of changes of cor-

CONNER, District Judge:

This is an appeal pursuant to 26 U.S.C. § 7482 from a decision of the United States Tax Court, 73 T.C. 1019, determining a deficiency in the tax return of appellant Gerli & Co., Inc. ("Gerli") for the taxable year 1965 in the amount of $346,448.50 and imposing a 5% penalty in the amount of $17,-332.42 pursuant to 26 U.S.C. § 6653(a).

*Factual and Procedural Background*

Gerli, a Delaware corporation engaged in textile manufacturing, had a wholly owned Canadian subsidiary, La France Textiles, Ltd. ("LFT") which was established in 1927[1] and operated profitably for many years. However, in the late 1950's LFT suffered several consecutive years of heavy losses and in 1959 sold its plants, equipment and inventories and substantially ceased business activity. After five years of searching for a suitable business venture for LFT, Gerli concluded in 1964 that LFT should be fully liquidated.

On October 26, 1964, Gerli applied to the Internal Revenue Service ("IRS") for a ruling that the liquidation of LFT would be accorded tax-free treatment pursuant to 26 U.S.C. §§ 332 and 367.

Section 332 provides that complete liquidation of a subsidiary corporation which is at least 80% owned by the taxpayer is a non-taxable event. Section 367, as it stood in 1965, provided that a foreign subsidiary "shall not be considered a corporation" for the purpose of eligibility for the Section 332 exemption unless

it is established to the satisfaction of the Secretary [of the Treasury] or his delegate that such exchange is not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income taxes.

In connection with Gerli's application for an exemption ruling, Gerli's counsel had a

---

porate name and a corporate reorganization in 1933. For simplicity, the name LFT will be used herein to refer to the corporation in all of its corporate forms and under all of its names.

number of discussions with IRS representatives, who indicated that such a ruling would not be issued unless Gerli agreed to report all of LFT's accumulated earnings and profits as dividend income to it during the year of liquidation. On December 2, 1964, Gerli accordingly filed an "Addendum to Request for Section 367 Ruling" in the form of a letter from Gerli's president, Francis M. Gerli, stating that Gerli

agrees that in the event it proceeds with the liquidation of LFT, Ltd., pursuant to a ruling of the Commissioner based on the solicitation of October 26, 1964, current and accumulated earnings of LFT, Ltd. at the time of liquidation will be treated by Gerli & Co., Inc., as dividend income in the year of the LFT, Ltd., liquidation, subject to applicable foreign tax credits.

On January 15, 1965, the IRS issued a letter stating that, based upon the information submitted and upon the foregoing representation,

(1) The proposed complete liquidation of L.F.T. is not in pursuance of a plan having as one of its principal purposes the avoidance of federal income taxes within the meaning of section 367 of the Code.

(2) In accordance with section 333(a), no gain or loss will be recognized by Gerli upon the receipt of L.F.T.'s assets provided all the requirements of section 332(b) are met.

\* \* \* \* \* \*

It is important that a copy of this letter be attached to the Federal income tax return of Gerli for the taxable year in which the transaction is consummated.

LFT was fully liquidated in 1965, with Gerli receiving cash and assets having a stipulated total value of $1,782,296. In its federal income tax return for that year, Gerli, contrary to its representation to the IRS, did not include as income any of the proceeds of the liquidation, but merely stated:

Approval for a tax free liquidation of LFT, Ltd. was received from the Treasury Department, Washington, D.C. on January 15, 1965.

No copy of the letter ruling of the IRS was attached to the return.

When Gerli's 1965 return was audited, the IRS issued a "30-day letter" which determined a deficiency of $372,826.23, based principally upon Gerli's failure to report as dividend income the accumulated earnings and profits of LFT. The Appellate Division of the IRS remanded the case to the District Director of the IRS, stating:

Our preliminary review of the case indicates that there is substantial doubt as to whether there is any legal authority to require the taxpayer to report dividend income in such a situation absent a binding closing agreement.

The District Director thereafter issued an amended 30-day letter treating as a long-term capital gain the amount of $1,370,013.43 by which the proceeds of the liquidation exceeded Gerli's cost of acquiring LFT's shares, and determining a deficiency of $346,448.50.[2]

Gerli petitioned the Tax Court for a redetermination of this deficiency. On March 5, 1980, the Tax Court (Samuel B. Sterrett, Judge) ruled (1) that Gerli was not entitled to the benefit of the IRS ruling granting tax exemption for the liquidation of LFT because it had failed to comply with the express condition of that ruling that the proceeds of the liquidation be reported as dividend income on Gerli's federal tax return for the year of liquidation, and (2) that Gerli was liable for a 5% negligence penalty under 26 U.S.C. § 6653(a).

On its present appeal from that ruling, Gerli urges that it was unreasonable and unlawful for the IRS to impose a condition on the grant of an exemption to which Gerli was entitled by statute. This issue is one of first impression, whose resolution requires at least a brief review of the purpose and history of the statutes and regulations involved.

---

**2.** The Tax Court also ruled that Gerli was not entitled to deduct $9,583 in legal expenses and

$1,080 in miscellaneous expenses, but that ruling was not appealed to this Court.

*Statutory and Regulatory Background*

Section 367 had its genesis in Section 112(k) of the Revenue Act of 1932, 47 Stat. 198. The Senate Report on Section 112(k) described its purpose as follows:

To prevent [tax] avoidance [Section 112(k)] withdraws the transaction from the operation of the non-recognition sections where a foreign corporation is a party to the transaction, unless prior to the exchange the Commissioner is satisfied that the transaction is not in pursuance of a plan having as one of its principal purposes the avoidance of taxes. It will be noted that under this provision a taxpayer acting in good faith can ascertain prior to the transaction, by submitting his plan to the Commissioner, that it will not be taxable if carried out in accordance with the plan. Of course, if the reorganization or the transfer is not carried out in accordance with the plan submitted the Commissioner's approval will not render the transaction tax-free. S.Rept.No.665, 72d. Cong., 1st Sess. (1932), 1939–1 (Part 2) C.B. 496, 515.

In *Abegg v. Commissioner of Internal Revenue*, 429 F.2d 1209, 1216 (2d Cir. 1970), this Court discussed the purpose of the statute in more specific terms:

[The Commissioner] cites the report of the Senate Finance Committee which explained the importance of Section 112(k) of the Revenue Act of 1932, the progenitor of Section 367, in preventing tax avoidance by a procedure whereby a taxpayer with large unrealized profits in securities would transfer them to a foreign corporation in exchange for its stock without recognition of gain under the predecessor of Section 351, would have the foreign corporation sell their securities *in a foreign country imposing no tax on the gain*, would cause the foreign corporation to invest the proceeds in the stock of a new American subsidiary and would then have the foreign corporation distribute the latter's stock in a tax free reorganization. (Emphasis added).

In *Dittler Bros., Inc. v. Commissioner*, 72 T.C. 896, 911 (1979) the Tax Court, before giving a similar example of the tax avoidance practices the statute was designed to prevent, stated:

The purpose of section 367 is to prevent the use of a tax haven or foreign corporations by domestic taxpayers who seek to transfer property to such corporations without recognition of gain.

On November 25, 1955, the Treasury Department promulgated regulations governing, *inter alia*, determinations pursuant to Section 367. The relevant portion provided:

§ 1.367–1 *Foreign Corporations.* Whether any one of the exchanges or distributions described in section 332, 351, 354, 355, 356, or 361, involving a foreign corporation, is in pursuance of a plan having as one of its principal purposes the avoidance of Federal income tax, is a question of fact. In any such case if a taxpayer desires to establish that an exchange or distribution is not in pursuance of such a plan, a statement, under oath, of the facts and circumstances relating to the plan under which the exchange or distribution is to be made, together with a copy of the plan, shall be forwarded to the Commissioner of Internal Revenue, Washington 25, D.C., for a ruling. A letter setting forth the Commissioner's determination will be mailed to the taxpayer. If the Commissioner determines that the exchange or distribution is not in pursuance of a plan having as one of its principal purposes the avoidance of Federal income tax, the taxpayer should retain a copy of the Commissioner's letter as authority for treating the foreign corporation as a corporation in determining the extent to which gain is recognized from the exchange or distribution. If the transaction is not carried out in accordance with the plan submitted, the Commissioner's approval will not render the transaction tax-free.

TD 6152, approved November 25, 1955; republished as TD 6500, approved November 9, 1960.

In 1960 or 1961, the Reorganization Branch of the IRS prepared internal guidelines for the issuance of exemption rulings

under Section 367. These guidelines provided a three-part test for determining whether a principal purpose of liquidation of a foreign subsidiary was the avoidance of Federal income taxes. The liquidation was treated as tax-free if any one of the following three conditions was satisfied:

(1) if the foreign income taxes paid by the subsidiary exceeded the United States taxes it would have paid if it had been a domestic corporation; or

(2) if the foreign income taxes paid by the subsidiary exceeded the United States taxes which would have been paid by the parent if the subsidiary had been a domestic branch of the parent; or

(3) if the domestic parent agreed to report all of the foreign subsidiary's current and accumulated earnings and profits as dividend income to it in the year of liquidation.

After the Revenue Act of 1962 was passed, the IRS, apparently finding the three-part test too onerous to administer, dropped the first two of these criteria, and since has issued Section 367 exemption letters only to taxpayers who agreed to report as dividend income in the year of liquidation of a foreign subsidiary all of the latter's current and accumulated earnings and profits. The tax paid on the income thus reported has come to be referred to as a "toll charge."

In 1968, the Treasury Department incorporated this single-criterion procedure in its Revenue Procedure 68–23, 1968–1 Cum. Bull. 821:

Sec. 3. *Transactions Which Ordinarily Receive Favorable Consideration Under Section 367 of the Code.*

.01 Section 332 of the Code. Complete liquidation of subsidiaries.

(1) Where a foreign corporation is liquidated into a domestic parent corporation and the latter agrees to include in its gross income as a dividend deemed paid in money for its taxable year in which the distribution in liquidation occurs the portion of the accumulated earnings and profits, if any, of the foreign corporation

for all taxable years of such foreign corporation properly attributable to such domestic parent corporation's stock in such foreign corporation. (See Sec. 4 below.) In such cases, the foreign tax credit provisions (sections 78, and 901 through 905 of the Code) will be applied as if immediately before the liquidation such earnings and profits were distributed as a dividend by the foreign corporation to the domestic parent corporation.

However, the following paragraph made clear that this procedure was not intended to be preclusive:

.02 Whether an exchange or distribution described in sections 332, 351, 354, 355, 356, or 361 of the Code involving a foreign corporation is pursuant to a plan, one of the principal purposes of which is the avoidance of Federal income tax, depends upon *all the facts and circumstances of each case.* This Revenue Procedure describes certain guidelines which will be used by the Service in considering requests for rulings under section 367 of the Code. * * * In reviewing each request for ruling to determine whether a favorable section 367 ruling should be issued under the guidelines, the Service reserves the right to issue an adverse ruling if, based on all the facts and circumstances of a case, it is determined that the taxpayer has not established that tax avoidance is not one of the principal purposes of the transaction. *Similarly, a taxpayer shall be free to establish that based on all the facts and circumstances of the taxpayer's case a favorable ruling under section 367 of the Code should be issued, notwithstanding a contrary statement or implication contained in the guidelines. . . .* [Emphasis supplied.]

In the Tax Reform Act of 1976, Section 367(b) was amended to withdraw the requirement of an advance ruling by the Commissioner in order to obtain tax-free treatment of the liquidation of a foreign subsidiary, provided the taxpayer complied with Treasury Regulations which Congress directed the Commissioner to promulgate. The Temporary Income Tax Regulations

under the Tax Reform Act of 1976, which were issued in compliance with this directive, carried forward the toll charge as a condition of eligibility for the Section 367 exemption:

§ 7.367(b)–5  *Complete liquidation of foreign subsidiary.*

(a) *Scope.*  The section applies to an exchange described in section 332 which involves receipt of a distribution in complete liquidation of a foreign corporation.

(b) *Receipt of distribution by a domestic corporation.*  If a domestic corporation which receives a distribution in complete liquidation of a foreign corporation includes in its gross income all the earnings and profits amount attributable to its stock in the distributor foreign corporation, the foreign corporation will be considered to be a corporation for purposes of applying sub-chapter C of chapter 1 of subtitle A of the Code.  The domestic corporation must include all the earnings and profits amounts in gross income for the taxable year in which occurs the date of distribution (within the meaning of section 381(b)(2) and the regulations thereunder).  If the domestic corporation does not include this amount in gross income, for the purpose of determining the extent to which gain is recognized on the exchange, the foreign corporation will not be considered to be a corporation.

The Tax Reform Act of 1976 also added to Title 26 a new Section 7477 providing that in the event of an adverse determination by the Secretary on an application for a Section 367 exemption respecting a transaction begun after October 9, 1975, or a failure by the Secretary to make such a determination, the taxpayer can bring in the Tax Court an action for a declaratory judgment as to whether the Secretary's determination was reasonable, or a determination of the Section 367 issue if the Secretary failed to make one.

Until Section 7477 was added, there was no statutory provision for direct judicial challenge of an IRS ruling under Section 367, because that Section required the "satisfaction of the Secretary."  *Dittler Bros.,* *Inc. v. Commissioner,* 72 T.C. 896, 907 (1979).

The Committee reports on the 1976 Act expressed an intent to limit, at least prospectively, the discretion of the Commissioner:

The fourth problem concerns the fact that since the law requires the satisfaction of the Commissioner, a taxpayer is unable to go through with a transaction and litigate in the courts the question of whether tax avoidance is one of the purposes of the transaction.  While your committee generally approves the standard applied by the IRS there may be cases where these standards are inappropriate or are not being correctly applied.  Your committee believes it is fair to permit taxpayers to litigate these questions in the courts.

H.R.Rep.No.94–658, 94th Cong., 1st Sess. at 241 (1976–3 Cum.Bull. (Vol. 2) 695, 933); S.Rep.No.94–938, 94th Cong., 2d Sess. at 263 (1976–3 Cum.Bull. (Vol. 3) 49, 302), U.S. Code Cong. & Admin.News 1976, pp. 2897, 3136, 3694.

### Discussion

Before the Tax Court, Gerli relied on the portion of the IRS letter of January 15, 1965 which determined that one of the principal purposes of the liquidation of LFT was not tax avoidance, seeking to divorce that determination from the express condition requiring payment of the toll charge.  That Court, to borrow its expression, was "underwhelmed," 73 T.C. at 1027, not unpredictably concluding that because Gerli had failed to comply with the express requirements of the Commissioner's Section 367 ruling, it was not entitled to rely on that ruling.

In this Court, Gerli instead attacks the IRS toll charge requirement as unreasonable and unlawful.  This places Gerli on somewhat firmer ground.  The plain implication of Section 367, as it stood in 1965, was that the Commissioner should determine, on application, whether one of the principal purposes of an exchange involving a taxpayer's foreign subsidiary is the avoid-

ance of Federal income taxes. There was nothing in the statute or in its legislative history to suggest that the Commissioner might impose, on the issuance of a favorable determination, conditions having no necessary logical relation to the issue determined.

In the circumstances of the present case, the toll charge appears to be a particularly inappropriate condition. LFT was clearly not organized for the purpose of avoiding United States taxes. It was in business for thirty-seven years, making a profit in each of the first thirty years. Its cumulative profits over the entire period of its operation were $6,988,241 and it paid Canadian income taxes of $2,480,561 thereon. LFT repatriated as dividends to its United States parent, Gerli, a total of $3,174,653 or approximately 80% of the net amount available after Canadian withholding taxes.

If LFT had been a domestic rather than a foreign corporation, it would have paid on this income United States taxes of $2,463,011 (expressed in Canadian dollars) or slightly less than the Canadian taxes it actually paid. Gerli obviously did not go to Canada in search of a tax haven.

Moreover, the bulk of LFT's accumulated earnings were realized during the early years of its operations, when both Canadian and United States corporate income taxes were much lower than they were in 1965 and are today. If Gerli is required to pay United States taxes at the 52% rate effective in 1965 on earnings made by LFT when the United States and Canadian rates were in the range of 11% to 14%, it would be paying much higher taxes than if LFT had paid out 100% of its earnings as dividends to Gerli in the years in which they were earned. Indeed, because of the foreign tax credit to which Gerli would have been entitled under 26 U.S.C. § 902 and its predecessors, Gerli would have paid little or no United States taxes on such complete and immediate payouts of LFT's earnings. It is therefore clear that the minor fractions of LFT's earnings which were not distributed to Gerli were retained merely to provide working capital for LFT and not for purposes of tax avoidance or deferral.

As explained in Sitrick, *Section 367 and Tax Avoidance: An Analysis of the Section 367 Guidelines*, 25 Tax L.Rev. 429, 435 n.13 (1970):

When foreign activities of a United States corporation are conducted in a country which imposes an effective tax rate as high or higher than imposed by the United States, e.g. Canada, the concept of economic tax deferral is meaningless, because the foreign tax credit mechanism in United States law operates to preclude United States taxation of foreign source profits earned by foreign subsidiaries of United States corporations, which profits are subject to an effective rate of tax on such profits as high or higher than the United States effective rate of tax applicable to such foreign source profits. See I.R.C. Section 902. Thus, any foreign source profits so taxed will not be subject to United States tax upon their repatriation as a dividend to [sic., of?] a foreign subsidiary to a United States corporation. Accordingly, the tax deferral concept is meaningful only in cases in which foreign operations of United States parent corporations are conducted in foreign subsidiary form in foreign countries which impose a tax on the profits generated by such foreign operations at an effective rate less than the effective rate of tax which would have been imposed upon such profits under United States law. Consequently, because of the operation of the foreign tax credit, when foreign operations of a United States corporation are conducted in foreign subsidiary form in a foreign country which imposes an effective rate of tax equal to or greater than that which would have been imposed on profits under United States law, it is clear that there is an avoidance of Federal income tax and, instead payment of an equal or greater income tax to a foreign country. However, the unilateral provision for a foreign tax credit in respect of such foreign taxes, contained in Sections 901 to 905 of the Code, suggests that the term

'avoidance' in Section 367 should not extend to such cases, since the foreign tax credit has been in the Internal Revenue Code since 1918, and Section 367 was enacted in 1932.

It is therefore apparent that if the IRS had made an actual determination pursuant to Section 367, it would have been compelled to conclude that Gerli was entitled to tax-free treatment for the liquidation of LFT. Instead of making such a determination as to whether Gerli's *purpose* in liquidating LFT was the avoidance of Federal taxes, the IRS mechanically imposed a condition which was obviously designed to prevent any liquidation of a foreign subsidiary from having the *effect* of tax avoidance. However, as applied in Gerli's case, the toll charge condition would not merely have prevented a tax avoidance effect, but would have resulted in a severe tax penalty, requiring Gerli to pay hundreds of thousands of dollars more in total taxes than it would have paid if LFT had been a domestic subsidiary or division of Gerli.[3]

From the beginning, the IRS interpreted Section 367 as requiring an individualized determination as to whether tax avoidance was one of the principal purposes of the transaction in question. The Treasury Department regulations in effect until the 1960's treated this as "a question of fact" to be determined on a verified showing of the "facts and circumstances relating to the plan under which the exchange or distribution is to be made." § 1.367–1, TD 6152.

Even after the IRS formally adopted the single-criterion procedure for making the determination, its guidelines still expressly provided that the issue "depends upon all the facts and circumstances of each case" and that "a taxpayer shall be free to establish that based upon all the facts and circumstances of the taxpayer's case a favorable ruling under section 367 of the Code should be issued notwithstanding a contrary

statement or indication contained in the guidelines." § 2.02, Rev.Proc. 68–23, 1968–1 C.B. 821–22.

Here Gerli was denied any such opportunity and was arbitrarily required to pay a substantial toll charge without the slightest consideration of the statutory criterion of tax avoidance purpose. As applied in this case, Section 367 was thus converted from its intended purpose of preventing tax avoidance by operation through a foreign subsidiary into a means for exacting a substantial tax penalty for such operation.

While Section 367, as it stood in 1965, required the "satisfaction of the Secretary" that one of the primary purposes of the liquidation was not tax avoidance, the Secretary's discretion was surely not intended to be limitless. Although the provision in Section 7477 of the 1976 Act for judicial review of an IRS determination under Section 367 was expressly made only prospective in its application, it clearly suggests a pre-existing Congressional intent that the determination must not be arbitrary or unreasonable.

In *Dittler Bros. v. Commissioner, supra*, the Tax Court considered for the first time the proper scope of its review, pursuant to Section 7477, of a determination by the Commissioner under Section 367. After noting that Senate Report 94–938 (1976–3 C.B. 299, 304) had stated that "[t]he Tax Court judgment ... is to be based upon a redetermination of the Internal Revenue Service's determination," the Court concluded that the proper standard of its review was the "substantial evidence rule." 72 T.C. at 910. Applying that standard, it found unreasonable the Commissioner's determination that a principal purpose of the plan there involved was the avoidance of Federal income taxes; this despite the fact that the plan included a transfer of cash and property to two corporations in the

---

**3.** The parties are in substantial disagreement about how the toll charge should have been calculated. They have stipulated that if Gerli had reported LFT's accumulated earnings and profits as dividend income to Gerli in 1965, the additional tax payable by Gerli thereon would have been $274,271.58 if the period of computation extended back to 1927, $118,706.71 if it went back to 1933 when LFT was reorganized and lesser amounts if it began in subsequent years. The Commissioner contends that the largest figure is the appropriate one.

Netherlands Antilles, where the maximum tax rate was 3%.

The Commissioner correctly points out that Section 367, by its very terms, applied only where the taxpayer had filed in advance a plan which satisfied the Secretary that a principal purpose of the contemplated exchange is not avoidance of Federal income taxes and the Regulations provided that "[i]f the transaction is not carried out in accordance with the plan submitted, the Commissioner's approval will not render the transaction tax-free." § 1.367–1, T.D. 6152. Thus, the Commissioner argues, when Gerli deliberately failed to comply with the plan which it had filed and the Commissioner had approved, Gerli waived any claim to a Section 367 exemption.

We disagree. Section 6213 of the Internal Revenue Code was designed to provide taxpayers with an avenue for challenging assessments that are contrary to the will of Congress. In this case, the obvious intent of Congress in enacting Section 367 was that the liquidation of a foreign subsidiary should be accorded the same tax-free treatment as the liquidation of a domestic subsidiary provided that the liquidation of the foreign subsidiary was not in pursuance of a plan to avoid taxes. Although Congress required that the taxpayer satisfy the Secretary of its eligibility for this exemption, Congress surely did not intend that the Secretary should resolve this issue by means of a regulation which would require the payment of a substantial tax in every case, even where it was clear that the liquidation was entirely innocent of any tax avoidance purpose.

It is unnecessary for this Court to pass generally on the enforceability of the toll charge requirement as it existed in 1965, but only on the propriety of imposing it in the particular circumstances of this case. We conclude that, as applied to the liquidation of LFT, the imposition of the toll charge was not a reasonable or acceptable substitute for compliance with the Commissioner's responsibility under 26 U.S.C. § 367 to determine whether one of the principal purposes of the liquidation was the avoid-

ance of Federal income taxes, that the requirement was therefore improper, and that there was no deficiency in Gerli's 1965 tax payment on this account. It follows that the negligence penalty of $17,332.40 should not have been imposed.

The decision of the Tax Court is reversed.